1    JOSHUA S. LIPSHUTZ (SBN 242557)
       jlipshutz@gibsondunn.com
2    GIBSON, DUNN & CRUTCHER LLP
     555 Mission Street
3    San Francisco, CA  94105-0921
     Telephone:  (415)-393-8200
4    Fax:  (415)-393-8306

5    WILLIAM E. THOMSON (SBN 187912)
       wthomson@gibsondunn.com
6    TIAUNIA N. HENRY (SBN 254323)
       thenry@gibsondunn.com
7    ABBEY HUDSON (SBN 266885)
       ahudson@gibsondunn.com
8    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
9    Los Angeles, CA  90071-3197
     Telephone:  (213) 229-7000
10   Facsimile:  (213) 229-7520

11   *Attorneys for Facebook, Inc.*

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16
     In re Ex Parte Application of              CASE NO. 3:18-mc-80024-SK
17
     SAM RAINSY, an individual residing in      **FACEBOOK, INC.'S OPPOSITION TO SAM**
18   France,                                    **RAINSY'S APPLICATION FOR LEAVE TO**
                                                **OBTAIN DISCOVERY UNDER 28 U.S.C. §**
19                     Applicant,               **1782**

20   For an Order Pursuant to 28 U.S.C. § 1782
     Granting Leave to Obtain Discovery from    Hearing
21                                              Date:       April 16, 2018
     FACEBOOK, INC.,                            Time:       9:30 A.M.
22                                              Courtroom:  San Francisco Courthouse,
                       Respondent,                          Courtroom A
23
     For use in connection with Foreign                  Magistrate Judge Sallie Kim
24   Proceedings.

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3   INTRODUCTION ................................................................................................................. 1

4   LEGAL STANDARD ........................................................................................................... 5

5   ARGUMENT ........................................................................................................................ 6

6   I.   This application seeks to compel Facebook to violate the Stored Communications Act
        and conflicts with the broad immunity established by the Communications Decency Act. .......... 6

7
        A.   The Stored Communications Act prohibits Facebook from disclosing the
8            communications the application seeks. ...................................................................... 6

9       B.   Granting the application would conflict with the broad immunity the
             Communications Decency Act confers on social media providers like
10           Facebook. .................................................................................................................. 8

11      C.   The application is part of an improper fishing expedition, not a legitimate
             attempt to obtain documents for use in foreign proceedings. .................................. 10

12
    II.  The Petitioner has not satisfied the legal or prudential requirements for obtaining
13       discovery under Section 1782. ................................................................................... 11

14      A.   There is no indication that the discovery the applicant seeks would be useable
             or useful in any foreign legal proceedings. ............................................................. 11

15
        B.   The discovery the applicant seeks would be unduly burdensome and intrusive. ....... 14
16
        C.   The application raises serious international comity concerns. ................................... 17
17
        D.   Section 1782 may not be used in connection with proceedings before the
18           International Criminal Court. .................................................................................. 19

19  III. Applicant has not provided the requisite notice to the parties in the foreign proceedings. ......... 20

20  CONCLUSION .................................................................................................................... 21

21

22

23

24

25

26

27

28

Gibson, Dunn &

Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009)..................................................................................8

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)....................................................................................18

*Bennett v. Google, LLC*,
   __ F.3d __, 2018 WL 1021235 (D.C. Cir. Feb. 23, 2018) .......................................8, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .....................................................1, 5, 17

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
   2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ..........................................................15

*Envt'l Tectonics v W.S. Kirkpatrick, Inc*,
   847 F2d 1052 (3d Cir. 1988) ..................................................................................18

*In re Facebook, Inc.*,
   923 F. Supp. 2d 1204 (N.D. Cal. 2012) .....................................................................6

*Fields v. Twitter*,
   No. 3:16-cv-00213-WHO, Dkt. No. 28 (N.D. Cal. Apr. 7, 2016) ................................9

*Gonzalez v. Twitter*,
   No. 4:16-cv-03282-DMR, Dkt. No. 49 (N.D. Cal. Oct. 3, 2016) ................................9

*Green v. Am. Online, Inc.*,
   318 F.3d 465 (3d Cir. 2003)......................................................................................8

*Intel Corp. v. Adv. Micro Devices, Inc.*,
   542 U.S. 241 (2004) ...............................................................................5, 11, 14, 17, 18

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
   123 F. Supp. 3d 1215 (N.D. Cal. 2015) ...................................................................16

*Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015).......................................................................................2

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) ...................................................................................9, 10

Gibson, Dunn &

Crutcher LLP

# TABLE OF AUTHORITIES

**Page**

*In re: Application of Joint Stock Co. Raiffeinsenbank,*
   2016 WL 6474224 (N.D. Cal. Nov. 2, 2016)..................................................................1

*Jones v. Dirty World Entm't Recordings LLC,*
   755 F.3d 398 (6th Cir. 2014)..................................................................9

*In re King.com Ltd.,*
   2016 WL 4364286 (N.D. Cal. Aug. 16, 2016)..................................................................15

*Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.,*
   760 F. Supp. 2d 109 (D.D.C. 2011) ..................................................................10

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan,*
   16 F.3d 1016 (9th Cir. 1994)..................................................................2, 3, 17, 20

*Medeiros v. Int'l Game Tech.,*
   2016 WL 1611591 (D. Nev. Apr. 22, 2016) ..................................................................14

*In re Microsoft Corp.,*
   2006 WL 825250 (N.D. Cal. Mar. 29, 2006)..................................................................5, 17

*Mujica v. AirScan Inc.,*
   771 F.3d 580 (9th Cir. 2014)..................................................................2, 19

*Nemet Chevrolet, Ltd. v. Consumerafairs.com Inc.,*
   591 F.3d 250 (4th Cir. 2009)..................................................................9

*Matter of Application of O2CNI Co., Ltd.,*
   2013 WL 5826730 (N.D. Cal. Oct. 29, 2013)..................................................................10, 11

*O'Grady v. Superior Court,*
   139 Cal. App. 4th 1423 (2006)..................................................................9

*Onuoha v. Facebook, Inc.,*
   No. 5:16-cv-06440-EJD, Dkt. No. 35 (N.D. Cal. Apr. 7, 2017)..................................................................9

*Optinrealbig.com, LLC v. Ironport Sys., Inc.,*
   323 F. Supp. 2d 1037 (N.D. Cal. 2004) ..................................................................9

*Perfect 10, Inc. v. CCBill LLC,*
   488 F.3d 1102 (9th Cir. 2007)..................................................................8

*In re Ex Parte Application of Rainsy,*
   4:16-mc-80258-DMR (N.D. Cal.)..................................................................19

Gibson, Dunn &

Crutcher LLP

## TABLE OF AUTHORITIES

**Page**

*In re Rubber Chemicals Antitrust Litig.*,
    486 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................17

*In re Sargeant*,
    __ F. Supp. 3d __, 2017 WL 4512366 (S.D.N.Y. 2017)...........................................10

*In re Sargeant*,
    278 F. Supp. 3d 814 (S.D.N.Y. 2017)......................................................................14

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*,
    482 U.S. 522 (1987) .................................................................................................17

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011).................................................................................6, 7

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004)...............................................................................7, 8

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
    2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) .........................................................14

*In re WinNet R CJSC*,
    2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) ..........................................................12

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014)...............................................................................7, 8

**Statutes**

18 U.S.C. § 2510 .................................................................................................................6

18 U.S.C. § 2702 .................................................................................................................6

18 U.S.C. § 2711 .................................................................................................................6

22 U.S.C. § 7423 .............................................................................................................2, 19

28 U.S.C. § 1782 ..............................................1, 2, 5, 6, 10, 11, 14, 15, 17, 18, 19, 20, 21

47 U.S.C. § 230 ...............................................................................................................8, 9

**Rules**

Fed. R. Civ. P. 26 ...............................................................................................................14

Fed. R. Civ. P. 30 ...............................................................................................2, 4, 14, 16, 20

Fed. R. Civ. P. 45 ............................................................................................................6, 20

Gibson, Dunn &

Crutcher LLP

## TABLE OF AUTHORITIES

**Treatises**                                                                                                              **Page**

Restatement (Third) of the Foreign Relations Law of the United States § 442 (1987) ........................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO.  3:18-MC-80024-SK

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Facebook takes very seriously the privacy of its users and the integrity of its service, and carefully evaluates allegations that the Facebook platform is being misused.  This Section 1782 application, however, is an unlawful and improper attempt to embroil Facebook—and this Court—in a political dispute among the ruling and opposition parties of Cambodia.  The applicant, the founder of Cambodia's main opposition party, seeks to force Facebook to investigate and disclose the private communications and account activity of his political opponents, including the Prime Minister of Cambodia, in violation of United States privacy laws and in derogation of Facebook's rights as a neutral communications platform.  And it seeks this Court's assistance in fishing for a wide array of documents that the applicant wishes to use in a political and media campaign against various Cambodian officials.  Section 1782 was not designed for these purposes.  Both the law and strong prudential considerations mandate that the application be denied outright, as no amount of "trimming" can cure its unlawful and invasive requests.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2013).[1]

First and foremost, the applicant's efforts to obtain information about Cambodian government officials' communications on Facebook run headlong into the Electronic Communications Privacy Act, a provision of the U.S. criminal code that strictly prohibits Facebook from disclosing the contents of its users' communications in response to a civil subpoena like the one proposed here.  It also runs contrary to United States policy embodied in the Communications Decency Act, which promotes free speech on the internet by providing broad immunity to Facebook and other online communications platforms for decisions they make regarding the third-party content they host.  This federal law and policy protects all Facebook users, including Mr. Sam, from the sorts of intrusive discovery into the contents of their online communications the application seeks here.

---

[1]  This opposition brief addresses the many grounds for denying the application outright.  If the application is granted, Facebook reserves the right to challenge each request in a motion to quash.  *See In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016) (decision to grant Section 1782 application "does not preclude [the respondent] from bringing a motion to quash or modify the subpoena" on grounds of "intrusiveness, relevance, breadth, or burdensomeness").

Gibson, Dunn & Crutcher LLP

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

In addition, this Court should deny the application because it does not satisfy the legal or prudential requirements for obtaining discovery under Section 1782:

1.  As an initial matter, the applicant has not set forth any evidentiary basis to establish that the discovery he seeks would be useable in any pending foreign legal proceeding, which is a statutory prerequisite to obtaining discovery under Section 1782.  *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015).  Because the applicant has provided only the most skeletal account of the purported proceedings—and has not provided a single pleading or any means of identifying those proceedings—it is impossible for the Court to judge the purported need for the discovery he requests.  In fact, as the attached declaration of Cambodian legal expert Sin Soputhi demonstrates, the applicant has not taken even the basic steps he should be expected to take to demonstrate he will be able to use the discovery in the foreign proceedings. Sin Decl. ¶¶ 4, 7, 10.

2.  The applicant's sweeping discovery requests, which include both a wide-ranging subpoena and a Rule 30(b)(6) deposition notice, are unduly burdensome.  Even based on the limited information the applicant has provided, the requests—which seek all manner of documents and information about Facebook's internal policies and practices, its efforts to enforce those policies and monitor the communications of its users, and its business engagements with the government of Cambodia—have no possible relevance to the issues at stake in the purported proceedings.  This alone warrants denial of the application.  *In re Ex. Parte Appl. of Nokia Corp.*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013).

3.  Granting this application would "raise[] serious concerns of international comity," *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1021 (9th Cir. 1994), as it seeks to discover the private communications of a foreign head of state.  Under these circumstances, "the foreign policy interests of the United States" and "the Constitution's commitment of the foreign affairs authority to the political branches" strongly support denying the application.  *Mujica v. AirScan Inc.*, 771 F.3d 580, 604, 606 (9th Cir. 2014); *In re Letters Rogatory*, 16 F.3d at 1021.

4.  There are strong indications that the undisclosed purpose of this application is to gather evidence for future proceedings in the International Criminal Court ("ICC").  United States law bars

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

1   this Court from rendering Section 1782 assistance to support the ICC.  22 U.S.C. § 7423(e).

2       5.  The Federal Rules of Civil Procedure prohibit the applicant from deposing witnesses or

3   obtaining documents without first providing notice to the foreign parties.  *In re Letters Rogatory*, 16

4   F.3d at 1019.  This Court should deny the application because the applicant has not even identified

5   the parties to the foreign proceedings, much less given any indication that he has notified them (or

6   intends to notify them) that he is seeking discovery that may implicate their privacy rights.

7       For these reasons, Facebook requests that this Court deny the application outright.

8                                    **BACKGROUND**

9       The applicant in this case, Sam Rainsy, is a longtime political opponent of the Prime Minister

10  of Cambodia, Hun Sen.  Mr. Sam founded the main opposition party in Cambodia and was, until re-

11  cently, its President.  For decades he has led efforts to remove the current leadership of Cambodia

12  from power by, among other tactics, campaigning to increase public awareness of alleged human

13  rights abuses in Cambodia and filing actions in the United States.

14      On February 8, 2018, Mr. Sam filed an ex parte application seeking leave to obtain wide-

15  ranging discovery from Facebook about the Government of Cambodia and its representatives' activi-

16  ties on Facebook.  While the application purports to seek "targeted discovery," its requests are actu-

17  ally extraordinarily broad.  For example, Mr. Sam seeks "[a]ll documents regarding the 'likes' on the

18  [Prime Minister's] . . . Accounts," as well as "[a]ll documents regarding the use of technologies or

19  methods . . . to generate" those "likes."  Hagey Decl., Ex. 1, Attach. 1 at 4–5.  He also seeks "[a]ll

20  documents regarding uses by the [Prime Minister's] Accounts to . . . engage in any . . . activity that

21  violates any" Facebook policy, as well as Facebook's communications with the Cambodian govern-

22  ment, including "[a]ll communications with the [Prime Minister] or the Cambodian government or its

23  representatives regarding Facebook's permission to do business . . . in Cambodia."  *Id*. at 5.  And,

24  among many other requests, he seeks information about "any communications using any Facebook

25  platform" to or from the Cambodian Prime Minister's Facebook account pertaining to several topics,

26  including any and all communications about Mr. Sam's political party.  *Id*. at 6.  Mr. Sam's requests

27  are not limited by time or geography, and in many cases would require Facebook to make subjective

28

3

Gibson, Dunn &
Crutcher LLP

judgment calls about how to interpret vague terms such as "investigation," "analysis," and "fake 'news.'"  *See id.* at 4 (RFP Nos. 1a. and 1b [seeking "documents related to any Facebook investigations [or] analysis"]), 5 (RFP No. 3a [seeking all documents regarding Cambodian Prime Minister's alleged use of Facebook to "disseminate 'fake' news"]).

In addition to these document requests, Mr. Sam seeks to compel Facebook to put forward a Rule 30(b)(6) deponent to testify as a corporate representative on a dozen, wide-ranging topics related to, among other things, the Cambodian Prime Minister's activities on Facebook and Facebook's communications with the Cambodian Prime Minister and the Government of Cambodia.  The deposition topics also broadly include Facebook's various policies governing the use, activity, and treatment of Facebook accounts and how those policies are enforced with respect to *all* users, not just the specific accounts discussed in the application.  *See* Hagey Decl., Ex. 1, Attach. 2.

Mr. Sam purports to seek this broad discovery in connection with four foreign proceedings, but provides no copies of the pleadings or any other documentation showing the nature of the proceedings or their status.  First, the application asserts that Mr. Sam "has been sued for defamation for posting on his Facebook page that the 'likes' on [the Cambodian Prime Minister's] Facebook page were purchased from click farms."  Appl. at 2.  According to Mr. Sam's Declaration, he was found guilty in that matter in 2016 and the judgment was upheld in early 2017.  Sam Decl. ¶ 6.  While Mr. Sam asserts that he is "seeking relief from Cambodia's Supreme Court," he provides no account of when he sought relief, what relief he is seeking, or any documentation showing that proceedings remain pending.  *Id*.  Second, the application claims that Mr. Sam was "sued for posting on Facebook that [the Cambodian Prime Minister] bribed a social media star to support him."  Appl. at 2.  Mr. Sam's Declaration states that he has already been convicted in that case.  Sam. Decl. ¶ 12.  Third, the application states that Mr. Sam was sued for posting about the killing of a Cambodian political activist.  Appl. at 2.  However, Mr. Sam's Declaration again confirms that he has already been convicted and sentenced in connection with that suit.  Sam Decl. ¶ 7.  Lastly, Mr. Sam claims he is being criminally prosecuted for incitement based on statements he posted on Facebook urging the Cambodian

4

Gibson, Dunn &
Crutcher LLP

1    military not to use force against protesters.  *Id*. ¶ 11.  But he does not say which of the many incite-

2    ment provisions in the Cambodian Penal Code are the basis for that alleged prosecution, nor provide

3    any details about the nature or status of the proceedings.

4        On February 15, 2018, this Court directed Facebook to file its brief in opposition to the appli-

5    cation by March 1, 2018, and authorized the applicant to file a reply no later than March 7, 2018.

6    The Court directed the parties to "specifically address the requirements regarding notice to parties in

7    the underlying action in Cambodia under the Federal Rules of Civil Procedure."  Dkt. No. 4.

8                                  **LEGAL STANDARD**

9        An applicant seeking discovery pursuant to 28 U.S.C. § 1782 must satisfy three statutory re-

10   quirements: (1) the person from whom discovery is sought must "reside" or be "found" in the district;

11   (2) the discovery must be for use in a "proceeding in a foreign or international tribunal"; and (3) the

12   applicant must be an "interested person."  28 U.S.C. § 1782.  If these requirements are met, "[t]he

13   statute authorizes, but does not require," the district court to compel the requested discovery.  *Intel*

14   *Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 255 (2004).  "Section 1782 does not give either for-

15   eign tribunals or litigants before them any 'right' to assistance."  *In re Microsoft Corp.*, 2006 WL

16   825250, at *3 (N.D. Cal. Mar. 29, 2006).

17       When exercising its discretion to consider a Section 1782 application, courts must weigh sev-

18   eral additional prudential factors, known as the *Intel* factors, including (1) whether the "person from

19   whom discovery is sought is a participant in the foreign proceeding"; (2) the nature and character of

20   the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the

21   United States; (3) whether the request is an attempt to circumvent foreign proof-gathering restrictions

22   or other policies of a foreign country or the United States; and (4) whether the discovery request is

23   "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–66.

24       The applicant bears the "burden to come to the court with [a] narrowly-tailored request in the

25   first instance," and failure to do so is grounds for denying an application outright.  *Nokia.*, 2013 WL

26   6073457, at *3; *Cathode Ray Tube*, 2013 WL 183944, at *4.

27

28

Gibson, Dunn & Crutcher LLP

5

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

**ARGUMENT**

**I.    This application seeks to compel Facebook to violate the Stored Communications Act and conflicts with the broad immunity established by the Communications Decency Act.**

Ignoring United States law that safeguards the privacy of these communications, the applicant seeks to force Facebook to conduct, and disclose the results of, a wide-ranging investigation into the account activities of several of its users, as part of a fishing expedition for material to use in his longstanding campaign against the Prime Minister of Cambodia. This extraordinarily broad application would force Facebook to violate the Stored Communications Act ("SCA") by disclosing the private communications of numerous people, including a foreign head of state, and would conflict with the federal immunity provided to Facebook and other social media platforms under the Communications Decency Act ("CDA"), which shields such companies from judicial proceedings arising out content created and published by third-parties. This Court should deny the application.

**A.    The Stored Communications Act prohibits Facebook from disclosing the communications the application seeks.**

United States law prohibits Facebook from disclosing the communications of the people who use its platform, subject only to certain enumerated exceptions not applicable here. The SCA (part of the ECPA) mandates that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Because Facebook is a provider of "electronic communication service," *In re Facebook, Inc.*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012), it is prohibited from divulging the contents of its users' communications, including "any information concerning the[ir] substance, purport, or meaning." 18 U.S.C. §§ 2510(8).

The SCA's prohibition on disclosure contains no exception for civil subpoenas, regardless of whether the subpoena is served under Rule 45 or under Section 1782. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. 2011). As the Ninth Circuit has explained, the SCA affirmatively "limits § 1782 by making it illegal for an entity that provides an electronic communication service to the public to produce the contents of its stored communications." *Id.* A subpoena

Gibson, Dunn &
Crutcher LLP

1    seeking such information is "invalid," "void," and merely "masquerade[es] as legal process." *Theofel*

2    *v. Farey-Jones*, 359 F.3d 1066, 1072–74 (9th Cir. 2004) (a subpoena that seeks documents protected

3    under the SCA "transform[s] . . . a bona fide state-sanctioned inspection into private snooping").

4    There is no exception where the subpoena seeks the protected documents of foreign citizens. *Suzlon*,

5    671 F.3d at 729 ("Any person means any person, including foreign citizens.").

6              Numerous document requests in the subpoena improperly seek disclosure of the contents of

7    Facebook users' communications.  For example, the applicant seeks "[a]ll documents regarding uses

8    by the [Cambodian Prime Minister's] Accounts to . . . make threatening or abusive messages to third

9    parties."  Hagey Decl., Ex. 1, Attach. 1, at 5 (RFP No. 3).  He also seeks "[a]ll documents regarding

10   the 'likes' on the [Cambodian Prime Minister's] Account," including "[d]ocuments showing the geo-

11   graphic source, date, user and account that sent the 'likes.'"  *Id*. at 4 (RFP No. 1).  These requests are

12   improper not only because they seeks users' communications *about* the "likes," but also because indi-

13   vidual users' "likes" themselves express "intended message[s]" (*In re Zynga Privacy Litig.*, 750 F.3d

14   1098, 1106 (9th Cir. 2014)) that Facebook is prohibited from disclosing.  "[L]iking a political candi-

15   date's campaign page communicates the user's approval of the candidate and supports the campaign

16   by associating the user with it."  *Bland v. Roberts*, 730 F.3d 368, 385 (4th Cir. 2013).  Producing

17   "[d]ocuments showing the geographic source, date, user and account that sent the 'likes'" (Hagey

18   Decl., Ex. 1, Attach. 1, at 4) would therefore disclose which users expressed "approval" or "support"

19   for, or some affinity with, the Prime Minister.  This is exactly what the SCA prohibits.

20             While the applicant couches some of his requests as seeking only "non-content information"

21   about users' communications, responding to the requests would inevitably reveal the subject matter,

22   and therefore the content, of specific communications by specific users.  For instance, Request 11

23   purports to seek "[a]ll header and meta-data information (*i.e.*, non-content information) regarding

24   (i) the date, (ii) times, (iii) senders, (iv) recipients, (v) date read, and (vi) forwarding and deleting ac-

25   tions, regarding any communications using any Facebook platform to and from any of the [Cambo-

26   dian Prime Minister's] accounts regarding . . . Sam Rainsy," his "Legal Cases," the opposition party,

27   and other specific topics.  Hagey Decl., Ex. 1, Attach. 1, at 5–6.  But however the request is styled,

28

7

1   disclosing that a specific user sent a message about a specific topic at a given date and time is pre-

2   cisely what the SCA prohibits, as it would "divulge . . . the contents of"—that is, the "intended mes-

3   sage conveyed by"—"[the] communication." *Zynga*, 750 F.3d at 1106.

4     The deposition topics suffer the same flaws.  The applicant seeks testimony about Facebook's

5   "policies and procedures" regarding "false, deceptive or misleading 'likes,'" "propaganda," and

6   "threatening, harassing or abusive statements."  Hagey Decl., Ex. 1, Attach. 2, at 4 (Topic Nos. 5–7).

7   And he seeks testimony about whether specific users violated these policies.  *Id.* (Topic No. 8).

8     In sum, the application must be denied because the subpoena it seeks to serve and the deposi-

9   tion it seeks to conduct are facially "invalid," "void," and "patently unlawful" under the SCA.

10   *Theofel*, 359 F.3d at 1073–74.

  **B.**   **Granting the application would conflict with the broad immunity the Communi-**
11        **cations Decency Act confers on social media providers like Facebook.**

12

13     The application also conflicts with federal law granting companies like Facebook broad im-

14   munity for the communications of third-parties on their platforms.  Section 230 of the CDA states

15   that "[n]o provider or user of an interactive computer service shall be treated as the publisher or

16   speaker of any information provided by another information content provider."  47 U.S.C. §

17   230(c)(1).  The CDA creates "broad federal immunity to any cause of action that would make service

18   providers liable for information originating with a third-party user of the service."  *Perfect 10, Inc. v.*

19   *CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  It also "shields from liability all publication deci-

20   sions, whether to edit, to remove, or to post, with respect to content generated entirely by third par-

21   ties" and protects "any activity that could be boiled down to deciding whether to exclude material

22   third parties sought to post online."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103, 1105 (9th Cir.

23   2009).  "In sum, the CDA 'allows [computer service providers] to establish standards of decency

24   without risking liability for doing so.'"  *Bennett v. Google, LLC*, __ F.3d __, 2018 WL 1021235, at *4

25   (D.C. Cir. Feb. 23, 2018) (quoting *Green v. Am. Online, Inc.*, 318 F.3d 465, 472 (3d Cir. 2003)).

26     But the protections of the CDA extend beyond mere immunity from liability, and have "been

27   understood to merit expansion."  *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408

28

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

Gibson, Dunn &
Crutcher LLP

(6th Cir. 2014).  "The broad construction accorded to section 230 as a whole has resulted in a capacious conception of what it means to treat a website operation as [a] publisher or speaker." *Jane Doe No. 1 v. Backpage.com*, LLC, 817 F.3d 12, 19 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017). Consistent with that "capacious" understanding of Section 230(c)(1), courts have recognized that the statute "protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles'" resulting from third-party content hosted on their websites.  *Nemet Chevrolet, Ltd. v. Consumerafairs.com Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)); *see also Jones*, 755 F.3d at 417 ("Given the role that the CDA plays in an open and robust internet . . . determinations of immunity under the CDA should be resolved at an earlier stage of litigation.").  "[C]lose cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites." *Roommates.com*, 521 F.3d at 1174.  Thus, this Court often stays discovery where a defendant invokes CDA immunity.  *See Onuoha v. Facebook, Inc.*, No. 5:16-cv-06440-EJD, Dkt. No. 35 (N.D. Cal. Apr. 7, 2017); *Gonzalez v. Twitter*, No. 4:16-cv-03282-DMR, Dkt. No. 49 at 20 (N.D. Cal. Oct. 3, 2016); *Fields v. Twitter*, No. 3:16-cv-00213-WHO, Dkt. No. 28 (N.D. Cal. Apr. 7, 2016).

In this case, the discovery burden the applicant seeks to impose on Facebook arises directly from the company's "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, . . . or alter content." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1044 (N.D. Cal. 2004).  Across the board, the requests "address the structure and operation of the [Facebook] website, that is, [Facebook's] decisions about how to treat postings." *Jane Doe*, 817 F.3d at 21.  Many of the requests target information about whether Cambodian officials have violated Facebook's policies and whether Facebook has taken any action to enforce those policies.  For example, he seeks "[a]ll documents and internal communications related to any disciplinary action related to . . . alleged or actual violations of [Facebook] Policies by the [Cambodian Prime Minister's] Accounts."  Hagey Decl., Ex. 1, Attach. 1, at 5 (RFP No. 6).  And he seeks "[d]ocuments related to any Facebook investigations, analysis and/or actions regarding the 'likes'" on those

9

accounts.  *Id.* (RFP No. 4).  Indeed, the central premise underlying the application is that Facebook is hosting content it should not be hosting—the applicant claims that the Prime Minister should have fewer "likes" and that he is misusing Facebook to "disseminate false information."  Appl. at 2.  Section 230(c)(1)'s protections "extend[] to . . . precisely th[ese] sort[s] of website policies and practices," *Jane Doe*, 817 F.3d at 20, as "the decision to print or retract is fundamentally a publishing decision for which the CDA provides explicit immunity."  *Bennett*, __ F.3d __, 2018 WL 1021235, at *4.  Under the CDA, Facebook should not be required to shoulder the burden and expense of responding to these facially overbroad document requests and deposition topics that relate entirely to content from third-parties it has published.

### C.   The application is part of an improper fishing expedition, not a legitimate attempt to obtain documents for use in foreign proceedings.

Using the unlawful means described above, which would violate both the SCA and the CDA, the applicant seeks to achieve improper ends.  "Section 1782 is not a device for fishing expeditions." *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 116 n.5 (D.D.C. 2011), *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. §1782*, 473 F. App'x 2 (D.C. Cir. 2012); *see also In re Sargeant*, __ F. Supp. 3d __, 2017 WL 4512366, at *6 (S.D.N.Y. 2017); *Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730, at *14 (N.D. Cal. Oct. 29, 2013).  Yet that is exactly what the applicant seeks to undertake through this application.

The applicant has spent the last several decades trying to oust the current leaders of the Cambodian government from power.  *See* Sam Decl. ¶¶ 1–7.  Facebook takes no position on such political disputes; the Facebook platform is used both by the Cambodian Prime Minister and the Cambodian opposition party—as well as innumerable politicians and activists worldwide—to communicate their messages.  Yet the applicant seeks to enlist Facebook in his efforts to effect regime change.  *See* Sam Decl. ¶ 14 (stating that he plans "to use the requested discovery . . . to establish the Cambodian government's misuse of Facebook, and for other contemplated proceedings related thereto").  As his lawyers have stated to the press, they "are counting on Facebook to help shed light on the regime's manipulation of technology."  Megha Rajagopalan & Hayes Brown, *Facebook Is Being Taken To Court*

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

Gibson, Dunn & Crutcher LLP

*Over Human Rights Abuses In Cambodia*, BuzzFeedNews (Feb. 8, 2018), http://bzfd.it/2HStued.

Section 1782 does not authorize freewheeling discovery to "help shed light" on issues that may be useful to an applicant's personal or political goals. Nor does it provide a vehicle for advancing through litigation the agendas of rival political parties in foreign countries, or for compelling a company to investigate purported violations of its policies. Rather, as the Supreme Court has explained, Section 1782 was promulgated to serve only two purposes: "providing efficient assistance to participants in international litigation," and "encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252. Neither purpose would be furthered by granting this application. Because the applicant's "motives are not demonstrably to aid the [foreign proceedings]," and because this is, instead, a "fishing expedition," the application should be denied. *O2CNI*, 2013 WL 5826730, at *14.

## II.     The Petitioner has not satisfied the legal or prudential requirements for obtaining discovery under Section 1782.

This Court also should deny the application because the applicant has failed to satisfy the statutory and judicial prerequisites for obtaining Section 1782 discovery.

### A.     There is no indication that the discovery the applicant seeks would be useable or useful in any foreign legal proceedings.

Under Section 1782, a court may not order discovery unless it is for use in a "proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. Yet the applicant has not sufficiently established the existence, status, or scope of any foreign legal proceedings; the application provides no satisfactory basis to conclude that foreign proceedings are actually pending, and does not explain how its wide-ranging requests would be useful in any of them.

The only support for the application's contention that proceedings are pending is the applicant's declaration. But the applicant is not a lawyer and his declaration cites only newspaper articles, not any court documents. The failure to come forward with any court pleadings or documents whatsoever is, by itself, sufficient reason to deny the application. *See In re WinNet R CJSC*, 2017 WL 1373918, at *9 (S.D.N.Y. Apr. 13, 2017) (quashing subpoena due to applicant's failure to disclose

Gibson, Dunn & Crutcher LLP

pertinent information concerning the underlying proceedings that "may very well have led the court to deny the application").  "At the very least, it is difficult to draw any conclusion but that [the applicant] feared that a candid description of the litigation would have undermined if not defeated its application." *Id.*; *Nokia Corp.*, 2013 WL 6073457, at *3 (denying Section 1782 application where the applicant provided "no copy of the German complaint or other pleading").

The applicant could have obtained documents confirming the existence and nature of the Cambodian proceedings.  Under Article 482 of the Criminal Procedure Code, the relevant parties receive notification letters regarding a court's decisions.  Such letters would have confirmed the status of the legal proceedings against the applicant.  In addition, Article 258 permits a party to request the court to allow a viewing or copying of case records, to deliver true copies or certified copies of documents, or to deliver a certificate of matters related to the action. Sin Decl. ¶ 5.  Not only has the applicant failed to provide any such documents, he has not even provided any identifying information for the cases.  *Id.* ¶¶ 6–7 (Cambodian cases generally state the name of the court, whether the case is criminal or civil, the case number, and the date the case was opened).  And the applicant has not identified any of the judgments or verdicts he references in the application, even though Cambodian judgments and verdicts each receive their own number.  *Id.*

Furthermore, of the four different "proceedings" referenced in the declaration, at least three appear to have concluded.  For example, the applicant claims he was "found guilty" of defamation on November 8, 2016, and acknowledges that the "judgment was upheld in January 2017." Sam. Decl. ¶ 6. While he asserts he is "seeking relief from Cambodia's Supreme Court," he offers no description of the type of relief he is seeking or the value of any new evidence in such a proceeding.  The application also claims that the applicant is appealing another defamation conviction.  Appl. at 9 (citing Sam Decl. ¶ 7).  But the declaration it cites for support *does not* say that the applicant is appealing his conviction, only that he is "challenging" a Government order barring him from Cambodia.  Sam Decl. ¶ 7.

The applicant's own cursory descriptions of the foreign legal proceedings indicate that the evidence he is seeking would be irrelevant and unusable.  The application's requests rest on the premise

Gibson, Dunn &
Crutcher LLP

that "[t]ruth is a defense to defamation under Cambodian law."  Sam Decl. ¶ 17.  However, the Cambodian Criminal Code does not set out any explicit defenses to a charge of defamation—whether truth or otherwise.  Sin Decl. ¶ 14.  And Article 305 of the Penal Code defines "Defamation" as including not only a claim that is "not true," but also "an accusation made in bad faith that tends to affect the honor or reputation of a person or an institution."  The application does not explain what it means to make an "accusation . . . in bad faith" under Cambodian law; it is unclear, for example, whether "bad faith" refers narrowly to the speaker's belief in the truth of his accusation or whether it refers more broadly to an improper motive in making the accusation.  If the latter, the truth of the accusation may well be beside the point.

The only support the applicant provides for the notion that truth is a defense to defamation in Cambodia is a reference to Articles 31 and 41 of the Cambodian Constitution.  Sam Decl. ¶ 17.  But Articles 31 and 41 do not address the issue at all.  Sin Decl. ¶ 15.  If anything, these Articles suggest that freedom of speech is much more limited in Cambodia than in the United States:  Article 41 states explicitly that "[n]o one shall exercise [freedom of expression] to infringe upon the honor of others, or to affect the good customs of society, public order and national security."  Sam Decl., Ex. 7.  And Article 31 states that "[t]he exercise of personal rights and freedom by any individual shall not adversely affect the rights and freedom of others," and that "[t]he exercise of such rights and freedom shall be in accordance with the law."  *Id.*

The application also asserts that Mr. Sam has been charged with "incitement."  But there are at least seven different species of incitement enumerated in the Cambodian Criminal Code, and the application does not specify which Article criminalizing incitement the applicant was accused of violating.  *See* Sin Decl., Ex. B (Cambodian Criminal Code Arts. 464, 465, 468, 471, 495, 496, 505).  In any event, the requests do not appear to be relevant to any of the various types of incitement in the Cambodian Penal Code, and there are no defenses specific to incitement.  Sin Decl. ¶ 20.

The applicant also vaguely asserts that he "is actively contemplating to initiate additional proceedings against [the Cambodian Prime Minister] and his regime related to its numerous documented

Gibson, Dunn &
Crutcher LLP

human rights abuses." Appl. at 17. However, his mere speculation that he might bring some undisclosed proceeding if his discovery efforts in the United States prove fruitful is plainly insufficient to justify Section 1782 discovery. The "embryonic" desire to file a lawsuit, without more, is not enough to support Section 1782 relief. *In re Sargeant*, __ F. Supp. 3d __, 2017 WL 4512366, at *6 (S.D.N.Y. Oct. 10, 2017). Rather, "the planned proceedings must be within reasonable contemplation." *KPMG*, 798 F.3d at 123–24. This means the applicant must "provide some objective indicium that the action is being contemplated." *Id*. "At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id*. at 124. Here, the applicant is trying to use Section 1782 as a pre-litigation investigative tool, which is fundamentally inconsistent with the purpose of the statute. *See In re Sargeant*, 2017 WL 4512366, at *6 ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it.").

### B.     The discovery the applicant seeks would be unduly burdensome and intrusive.

The application should also be denied because it seeks extraordinarily broad and burdensome discovery from Facebook—including a wide-ranging Rule 30(b)(6) deposition—that is plainly disproportionate to the discovery's potential usefulness in the alleged foreign proceedings.

In considering whether to grant a Section 1782 application, courts must weigh whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–66. "Discovery request[ed under Section 1782] must be 'proportional' considering 'the issues at stake in the [foreign proceeding] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *MetaLab*, 2018 WL 368766, at *4 (quoting Fed. R. Civ. P. 26(b)(1)).[2] "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *Id*. (quoting *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp.

---

[2] "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure," *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016), regardless of whether the foreign proceeding is civil or criminal, *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591, at *3 & n.2 (D. Nev. Apr. 22, 2016).

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

Gibson, Dunn &
Crutcher LLP

3d 1029, 1043 (N.D. Cal. 2016)).

Here, it is impossible to say precisely what "issues [are] at stake" in the foreign proceedings because the application does not provide any documentation from those proceedings. Therefore, there is no basis to weigh the burdens and purported benefits of the discovery the applicant seeks. This alone is sufficient reason to deny the application. *See Nokia*, 2013 WL 6073457, at *3 ("With no copy of the German complaint or other pleading regarding Nokia's infringement contentions, the court agrees . . . that these demands would impose an undue burden."). "The party issuing the sub-poena has the burden of demonstrating the relevance of the information sought." *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *3 (N.D. Cal. Oct. 12, 2016). The applicant has not come close to satisfying that burden.

Even based on the limited information that can be gleaned from the application, these requests are unduly burdensome. As discussed above, disclosing the information the applicant seeks would violate United States law and the privacy rights of Facebook users. Further, the document requests and deposition topics appear to be irrelevant to the four proceedings described in the application, making it "obvious . . . that [the applicant] seeks an impermissible fishing expedition through a § 1782 application." *In re King.com Ltd.*, 2016 WL 4364286, at *8 (N.D. Cal. Aug. 16, 2016). What little detail the applicant provides about the "incitement" charges appear to pertain to his *own* use of Facebook, not any of the individuals targeted by the requests. *See* Sam Decl. ¶¶ 5, 11. He asserts, for example, that a case was filed against him for "complicity in forgery" and "incitement" after some-one posted on his wall "questioning the authenticity of documents relating to Cambodia's border with Vietnam." *Id*. ¶ 5. Those charges have nothing to do with whether the Prime Minister of Cambodia violated Facebook's policies. Neither do the defamation charges stemming from his allegations re-garding the alleged murder of a Cambodian political activist and the Cambodian Prime Minister's al-leged bribery of a social media celebrity. *See id*. ¶ 12. The only apparent connection between these charges and Facebook is that the *applicant* posted about them on his own Facebook wall. *Id*. Lastly, the applicant claims he was sued for defamation after "expos[ing]" the Cambodian Prime Minister's

Gibson, Dunn &
Crutcher LLP

alleged "buying of fake 'likes' from 'click farms.'"  Sam Decl. ¶ 6.  But the applicant does not indicate what he actually said, so it is impossible to judge whether any of his requests are at all related to his allegations against the Prime Minister.  He notably does not contend he has been sued for defamation for saying that the Prime Minister uses Facebook for any other allegedly improper purposes, yet seeks wide-ranging discovery into any and all Facebook policy violations by him and other officials.

The application's request for a Rule 30(b)(6) deposition is particularly burdensome.  Requiring Facebook to submit to a deposition any time the speech of one of its billions of users might potentially be useful in some future proceeding would be unmanageable, and would contradict the Communication Decency Act's intent to protect service providers from "having to fight costly and protracted legal battles" related to the content on their websites.  *Roommates*, 521 F.3d at 1175.  As explained above, that Act expresses Congress's clear concern that the proliferation of speech on the internet would be stifled if service providers were saddled with judicial proceedings as a result of the third-party communications they host.  "[A] company which provides document storage and sharing service for documents it does not create . . . should not bear the burden of providing testimony in all cases in which such records are at issue."  *See Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218–19 (N.D. Cal. 2015) (granting motion to quash third-party subpoena seeking testimony of a document storage company regarding user's activities); *see also O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006) ("Responding to such routine subpoenas [related to users' communications] would . . . be likely to impose a substantial new burden on service providers," and "routine compliance might deter users from using . . . new media to discuss any matter that could conceivably be implicated in litigation.").

The plain overbreadth of the applicant's requests makes it appropriate to deny the application outright.  "It is no substitute to kick the can down the road—especially when [Facebook] has appeared before the court to address the scope of the requests up front."  *Nokia*, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013) ("Because [the applicant's] subpoena application is not narrowly tailored, and appears highly intrusive as well as unduly burdensome, this factor weighs strongly against" granting the application); *Cathode Ray Tube*, 2013 WL 183944, at *4 (there is no need to

16

Gibson, Dunn &
Crutcher LLP

1   "trim" intrusive or burdensome requests; they "may be rejected" (quoting *Intel*, 542 U.S. at 265)).

2   **C.   The application raises serious international comity concerns.**

3   This application also places this Court on a "collision course" with the foreign policy preroga-

4   tives of the United States.  *Microsoft*, 2006 WL 825250, at *3 (citation omitted).  Many of the appli-

5   cant's requests seek access to what he alleges are the highly sensitive communications of Cambodian

6   government officials.  He has sought this discovery in the United States in order to evade Cambodian

7   privileges that may protect from disclosure the documents he seeks.  For these reasons, granting this

8   wide-ranging application has the potential to create friction between the United States and Cambodia.

9   Because the application "raise[s] serious concerns of international comity," *In re Letters Rogatory*, 16

10  F.3d at 1021, it should be denied.

11  The *Intel* factors direct courts to consider issues of comity when deciding whether to exercise

12  their discretion to grant Section 1782 applications.  The second factor focuses on the nature and char-

13  acter of the foreign proceeding, and whether the foreign court is receptive to the type of judicial assis-

14  tance sought.  And the third factor considers whether the request is an attempt to circumvent foreign

15  proof-gathering restrictions or other policies of a foreign country.  *Intel*, 542 U.S. at 264–66.  These

16  factors reflect American courts' "long recogni[tion]" of "the demands of comity in suits involving

17  foreign states, either as parties or as sovereigns with a coordinate interest in the litigation," *Societe*

18  *Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546

19  (1987).  *See, e.g.*, *Cathode Ray Tube*, 2013 WL 183944, at *3 (denying Section 1782 application

20  based in part on comity concerns); *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078,

21  1084 (N.D. Cal. 2007) (same); *In re Microsoft Corp.*, 2006 WL 825250, at *3 (same).

22  Here, the character of the alleged proceedings gives the Cambodian government a direct inter-

23  est in this matter.  The applicant seeks to use any discovery he obtains to bring "proceedings against

24  [the Cambodian Prime Minister] and his regime related to . . . human rights abuses."  Appl. at 17.

25  While the application's requests are directed at Facebook, nearly all of them seek confidential infor-

26  mation about the Cambodian Prime Minister and other Cambodian officials' communications and ac-

27  tivities.  *See, e.g.*, Hagey Decl., Ex. 1, Attach. 1, at 4–6(RFP Nos. 1–11).  Disclosing this information

28

17

Gibson, Dunn &
Crutcher LLP

has the potential to strain relations between the United States and Cambodia. "Foreign governments have often expressed their dissatisfaction with the wide discovery authorized under the Federal Rules, finding it intrusive and overbroad when compared to [alternative] version[s] of the fact-finding process." *Envt'l Tectonics v W.S. Kirkpatrick, Inc*, 847 F2d 1052, 1062 n.11 (3d Cir. 1988). "No aspect of the extension of the American legal system beyond the territorial frontier of the United States has given rise to so much friction as the requests for documents in investigation and litigation in the United States." Restatement (Third) of the Foreign Relations Law of the United States § 442 (1987). There is every reason to believe Cambodia would not be "receptiv[e]"—and would, in fact, be hostile—to the "judicial assistance" the applicant seeks. *Intel*, 542 U.S. at 264.

The comity concerns are particularly acute here because Cambodian law may specifically exempt from disclosure the documents applicant seeks. As the application's supporting exhibits show, under Cambodian law, individuals need not disclose "document[s] that involve[] the official secrets of a public official, where production of such document[s] would significantly hinder the exercise of public duties." Sam Decl., Ex. 10; Sin Decl. ¶ 21. And Cambodian courts may be required to obtain approval from the concerned governmental agency before using any documentary evidence that involves official secrets of a public official. Sin Decl. ¶ 22. Many of the requests that ask for information about the Cambodian Prime Minister's communications and activities on Facebook might violate this privilege. *See, e.g.*, Hagey Decl., Ex. 1, Attach. 1, at 4–6 (RFP Nos. 1–12); *id.*, Attach. 2, at 3–4 (Topic Nos. 1–4, 8–10). For example, several requests target the "Hun FB Group Accounts," which the subpoena defines broadly to include numerous "persons involved in the Cambodian Government," including the "Director of Military Intelligence" and the "Head of the National Police's Central Security Department." *Id.*, Ex. 1, Attach. 1, at 1. "A grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782." *In re Bayer AG*, 146 F.3d 188, 192 (3d Cir. 1998).

Because granting the application would risk jeopardizing the United States' relations with Cambodia, thereby undermining "the Constitution's commitment of the foreign affairs authority to the political branches," *Mujica*, 771 F.3d at 606, this Court should deny the application.

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

Gibson, Dunn & Crutcher LLP

### D.   Section 1782 may not be used in connection with proceedings before the International Criminal Court.

Finally, the breadth of the applicant's requests and his failure to connect those requests to any of the purported proceedings he identifies in his application suggest that he may be seeking discovery for a different purpose:  To bolster his efforts to bring charges against the Prime Minister of Cambodia in the International Criminal Court.  *See* Appl. at 17 ("Applicant . . . is actively contemplating to initiate additional proceedings against Hun and his regime related to its numerous documented human rights abuses.").  Under federal law, Section 1782 cannot be used for that purpose.  *See* 22 U.S.C. § 7423(e) ("no agency or entity of the United States Government or any State or local government, including any court may provide support to the International Criminal Court").

Notably, Richard J. Rogers of Global Diligence LLP is listed as counsel of record on the application.  Rogers declares himself to be "[a]n expert in international human rights and international criminal law," with a particular focus on proceedings before the ICC.  *See* "Richard J. Rogers," Global Diligence, http://bit.ly/2EZWu61.  He represents Cambodian residents who have submitted a Communication to the Prosecutor of the ICC alleging human rights abuses against the Cambodian Prime Minister.  *In re Ex Parte Application of Rainsy*, 4:16-mc-80258-DMR, Dkt. No. 1 at ii; Dkt. No. 3 at ¶ 1 (Rogers represents Cambodian victims before ICC); ¶ 2 (alleging human rights violations); *see also* "ICC Cambodian Case Study," Global Diligence, http://bit.ly/2GNB48P (describing Rogers's filing of a communication to the Prosecutor of the ICC regarding Cambodian government).  It is therefore no accident that several of the applicant's requests mirror the allegations in the Communication submitted to the ICC.  Specifically, RFP Nos. 3–7, 14 and 15 seek evidence supporting the ICC Communication's allegations that the Cambodian Prime Minister and his regime have persecuted Cambodian citizens through the Hun Group FB Accounts.  Hagey Decl., Ex. 1, Attach. 1, at 5–6.  RFP No. 10 and its subparts seek the same regarding Mr. Sam, his legal cases, the opposition party, Kem Sokha, and Dr. Kem Ley.  And deposition topics 8b and 8c seek information concerning oppression of Cambodian's citizens and alleged threats against the applicant and others.  Hagey Decl., Ex. 1, Attach. 2, at 4.

Gibson, Dunn & Crutcher LLP

Because the application is an obvious attempt to evade federal law by obtaining discovery that may be used in support of ICC proceedings, this Court should deny the application.

## III.   Applicant has not provided the requisite notice to the parties in the foreign proceedings.

This Court directed the parties to address whether the applicant has complied with the "requirements regarding notice to parties in the underlying action in Cambodia under the Federal Rules of Civil Procedure." Dkt. No. 4. He has not.

Unless otherwise ordered by this Court, the Federal Rules of Civil Procedure prohibit the applicant from deposing witnesses or obtaining documents without first providing notice to the foreign parties. *In re Letters Rogatory*, 16 F.3d at 1019 ("[T]he clear language of § 1782(a) bound the [foreign party seeking discovery] to follow the Federal Rules of Civil Procedure."). "Rule 30(b)(1) requires that '[a] party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action.'" *Id*. at 1019–20. The Ninth Circuit has held, in the context of a request to issue letters rogatory under Section 1782, that "every other party to the action" encompasses the parties in the foreign proceeding. *Id*. Therefore, under the Federal Rules, the applicant must provide notice to any foreign parties before deposing any Facebook witness. Similarly, where a "subpoena commands the production of documents," Rule 45 requires that "a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Thus, Rule 45, too, requires notice to the foreign parties before the applicant may seek documents from Facebook. *See In re Letters Rogatory*, 16 F.3d at 1020 & n.4.

This Court should not deviate from the default rule requiring notice under the Federal Rules. *See* 28 U.S.C. § 1782(a). Because the applicant seeks documents that could invade the privacy rights of the parties in the foreign proceedings (if there are any such proceedings), this Court should require the applicant to specify the parties to the foreign proceedings and come forward with a workable plan for notifying them of the discovery he seeks. His failure to do so is out of compliance with the Federal Rules, another reason to deny the application outright.

Gibson, Dunn &
Crutcher LLP

**CONCLUSION**

Facebook respectfully requests that the Court deny the Section 1782 application in its entirety.

DATED:  March 1, 2018                    GIBSON, DUNN & CRUTCHER LLP

By:    _Joshua S. Lipshutz_
                    Joshua S. Lipshutz

*Attorneys for Facebook, Inc.*

*Email:  jlipshutz@gibsondunn.com*

FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY
UNDER 28 U.S.C. § 1782, CASE NO. 3:18-MC-80024-SK

Gibson, Dunn &
Crutcher LLP

# CERTIFICATE OF SERVICE

I, Gregory Bok, declare as follows:

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, CA 90071-3197, in said County and State. On March 1, 2018, I served the following document(s):

**FACEBOOK, INC.'S OPPOSITION TO SAM RAINSY'S APPLICATION FOR LEAVE TO OBTAIN DISCOVERY UNDER 28 U.S.C. § 1782**

**DECLARATION OF SIN SOPUTHI IN SUPPORT OF FACEBOOK, INC.'S OPPOSITION TO § 1782 APPLICATION AND SUPPORTING EXHIBITS**

on the parties stated below, by the following means of service:

> Richard John Rogers
> Global Diligence LLP
> Kemp House
> 152 City Road
> London ECIV 2NX
> United Kingdom
> richardrogers@globaldiligence.com

☑ **BY ELECTRONIC SERVICE**: On the above-mentioned date, I caused the documents to be sent to the persons at the electronic notification addresses as shown above.

☐ **BY OVERNIGHT DELIVERY**: On the above-mentioned date, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses shown above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier with delivery fees paid or provided for.

☑ **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 1, 2018.

_____
Gregory Bok

Gibson, Dunn &
Crutcher LLP