1  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
      borden@braunhagey.com
3  BRAUNHAGEY & BORDEN LLP
   220 Sansome Street, Second Floor
4  San Francisco, CA 94104
   Telephone: (415) 599-0210
5  Facsimile: (415) 276-1808

6  Richard J. Rogers, Esq. (SBN: 189978)
      richardrogers@globaldiligence.com
7  GLOBAL DILIGENCE LLP
   Kemp House
8  152 City Rd
   London EC1V 2NX
9  UNITED KINGDOM
   Telephone: +44 (0)74 84822740
10
   COUNSEL FOR APPLICANT SAM RAINSY
11

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>SAM RAINSY, an individual residing in France,<br><br>      Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from<br><br>FACEBOOK, INC.,<br><br>      Respondent,<br><br>For use in connection with Foreign Proceedings. | Case No. 3:18-mc-80024-SK<br><br>**APPLICANT SAM RAINSY'S REPLY TO OPPOSITION TO *EX PARTE* APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................. 1

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 4

I.    THE COURT'S ORDER TO ADDRESS THE NOTICE REQUIREMENT .................... 4

II.   APPLICANT DOES NOT SEEK MATERIALS PROTECTED BY THE
      STORED COMMUNICATIONS ACT ............................................................................. 5

III.  THE COMMUNICATIONS DECENCY ACT HAS NO RELEVANCE TO
      THIS CASE AND DOES NOT PRECLUDE ANY DISCOVERY OF
      FACEBOOK ....................................................................................................................... 8

IV.   APPLICANT OVERWHELMINGLY HAS SHOWN THAT THE
      INFORMATION IS SOUGHT FOR USE IN FOREIGN PROCEEDINGS ..................... 9

      A.    Applicant Has Shown that the Information Sought Will be Useful in
            the Foreign Proceedings ........................................................................................ 11

      B.    Facebook's Speculation about Applicant's Motives Is Both
            Misguided and Irrelevant ...................................................................................... 13

V.    FACEBOOK'S EFFORT TO ASSERT "COMITY" CONCERNS ON
      BEHALF OF CAMBODIA'S DICTATORSHIP IS UNSUPPORTED .......................... 14

VI.   THE DISCOVERY REQUESTS DO NOT IMPOSE AN UNDUE BURDEN .............. 14

CONCLUSION .............................................................................................................................. 16

## **TABLE OF AUTHORITIES**

**CASES**

*Application of Furstenberg Fin. SAS v. Litai Assets LLC*,
  877 F.3d 1031 (11th Cir. 2017) .................................................................................................. 2

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
  No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ............................................. 12

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir.1995) ...................................................................................................... 12

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ............................................................................................... 8, 9

In *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-0,
  7-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .......................................................... 14

*In re Accent Delight Int'l Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ....................................................................................................... 2

*In Re Ex Parte Application of Nanopyxis Co., LTD., Applicant.*,
  No. 4:17-MC-80151-KAW, 2018 WL 1156838 (N.D. Cal. Mar. 5, 2018) ................................ 15

*In re Hornbeam Corporation*,
  --- Fed. Appx. ----, 2018 WL 416486 (2d Cir. 2018) ................................................................ 2

*In re Merck & Co., Inc.*,
  197 F.R.D. 267 (M.D.N.C. 2000) ............................................................................................... 5

*In re Microsoft Corp.*,
  No. C06-80038 JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006) .................................. 14

*In re Ex Parte Application of Nokia Corp.*
  2013 WL 6073457 ..................................................................................................................... 13

*In re Republic of Ecuador*,
  No. 10-MC-00040 GSA, 2010 WL 4027740 (E.D. Cal. Oct. 14, 2010) ................................... 11

*In re Rubber Chemicals Antitrust Litig.*,
  486 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................................... 14

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ........................................................................................ 10, 12

*In re WinNet R CJSC*,
  2017 WL 1373918, (S.D.N.Y. Apr. 13, 2017) ......................................................................... 12

*In re: Request for Int'l Judicial Assistance From the Turkish Ministry of Justice*,
   No. 16-MC-80108-JSC, 2016 WL 2957032 (N.D. Cal. May 23, 2016) .................................. 6, 7

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .............................................................................................................. 10, 14

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
   123 F. Supp. 3d 1215 (N.D. Cal. 2015) ..................................................................................... 15

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
   No. 14 CIV. 9997 CM, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) .......................................... 10

*Knaggs v. Yahoo! Inc.*,
   No. 15-MC-80281-MEJ, 2016 WL 3916350 (N.D. Cal. July 20, 2016) ....................................... 4

*Levitt v. Yelp! Inc.*,
   No. C 10-1321 MHP, 2011 WL 13153230 (N.D. Cal. Mar. 22, 2011) ......................................... 8

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) ................................................................................................. 11, 12

*Technik v. Panasonic Avionics Corp.*,
   No. C17-1453-JCC, 2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) ......................................... 2

*Thompson v. Doel*,
   No. 513CV80088EJDPSG, 2013 WL 5544607 (N.D. Cal. Oct. 7, 2013) ..................................... 6

**STATUTES**

18 U.S.C. § 2701 ................................................................................................................................ 6
18 U.S.C. § 2702 ................................................................................................................................ 6
22 U.S.C. § 7433 .............................................................................................................................. 13
28 U.S.C. § 1782 ....................................................................................................................... passim

**RULES**

Fed. Rule of Civ. Proc. 30 and 45 ................................................................................................. 2, 4
Rule 45 ............................................................................................................................................... 4

Applicant Sam Rainsy respectfully submits this Reply and accompanying Declarations of Sam Rainsy ("Rainsy Rep. Dec.") and J. Noah Hagey ("Hagey Rep. Dec.") in further support of his Application for an Order for Leave to Obtain Discovery from Facebook.

## INTRODUCTION

Applicant Sam Rainsy seeks discovery that can only be obtained from Facebook and which is likely to produce evidence showing that the trumped-up foreign claims and allegations against Mr. Sam are false.  Against this, Facebook's nuclear-blunderbuss "Opposition" flouts decades of settled § 1782 precedent (some proudly made by Facebook's own counsel at Gibson Dunn) and seeks to deny discovery based on supposed concern for user privacy.  But the social media giant really is engaged in pretextual double-speak.  Far from being a neutral actor, Facebook reaps millions of dollars in revenue through wartime profiteering.  It sells advertising to regimes that are using the platform to commit human rights atrocities.

None of the requests at issue seek "private" user content, and certainly none are shielded by any law.  In fact, Applicant's requested discovery *expressly exempts* such material from production. *See* Hagey Decl. (Dkt. 3) Exh. 1 (the "Subpoena") at 4 (carving-out content discovery).  Further, in using Facebook's platform, Hun Sen and his agents expressly acknowledged that all of the information at issue would be held in the U.S., subject to subpoenas and otherwise adjudicated in this this Court.  Hagey Rep. Decl., Exh. 1 ("Special Provisions Applicable to Users Outside the United States").

What Facebook's Opposition really seeks is to bar discovery of its own conduct and tolerance of foreign manipulation of the platform from public view.  This transparent motive is, of course, in stark relief to the company's lofty public pronouncements devoted to transparency, democracy and upholding its own principles and rules.  Indeed, notwithstanding its representations to Congress, breaking news reports continue to show Facebook's willful apathy to enable, and then obfuscate, the admitted misuse of its platform, both here and abroad.

Facebook's legal arguments grow from this malignant soil.  The entire Opposition scrupulously avoids the controlling lessons set forth in Justice Ginsburg's seminal 2004 Supreme Court decision in *Intel*, that § 1782 is a flexible discovery mechanism designed to readily permit

discovery upon a "*de minimis*" showing, regardless of whether the requested information is usable in the foreign tribunal, and even in cases where there is no foreign proceeding at all. For this reason, the Ninth Circuit and courts all over the country have broadly permitted parties to avail themselves of § 1782 discovery in all manner of cases involving sensitive and troublesome documents, including material involving trade secrets, human rights abuses, criminal investigations.[1] With such framework in mind, none of Facebook's seven supposed blockades to discovery here hold any weight:

**First**, question is raised regarding whether notice to Hun Sen and his agents in the foreign proceedings is necessary or relevant. Contrary to Facebook's argument, those parties already have actual notice of the Petition, having repeatedly commented on it publicly. *See* Hagey Rep. Decl. Exhs. 2 and 3. They call the Application (and Applicant) "stupid" and explain that he should have bought-off Facebook like they did. *Id.* Further, while most courts generally have not insisted upon any third party notice procedure under § 1782, such requirement under the Federal Rules would only arise *after* granting of the Application and in concert with service of the Subpoena, never before. *See* Fed. Rule of Civ. Proc. 30 and 45.

**Second**, Facebook's reference to the Stored Communications Act ("SCA") is misguided because the requested discovery seeks non-content information and expressly excludes any documents or information that would contravene the statute. Each of the document categories is examined in detail for the Court's convenience below.

**Third**, the Communications Decency Act ("CDA") has nothing to do with party discovery; it solely is a defense to liability and has no bearing on this case.

**Fourth**, contrary to Facebook's argument, no rule anywhere requires Applicant to present

---

[1] *In re Hornbeam Corporation*, --- Fed. Appx. ----, 2018 WL 416486 (2d Cir. 2018) (foreign proceeding sufficiently contemplated due to party's prior legal actions and "represent[ation] that it intended to initiate further litigation"); *Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1035 (11th Cir. 2017) (refusing to consider whether applicants even "have standing" to initiate the foreign proceeding); *Technik v. Panasonic Avionics Corp.*, No. C17-1453-JCC, 2017 WL 6311356, at *2 (W.D. Wash. Dec. 11, 2017) (foreign proceeding sufficiently likely because it was reasonable to conclude the party "would explore actions" similar to another it had recently won); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 129 (2d Cir. 2017) (rejecting the argument that § 1782 applicants must have even a "chance of success" in the foreign proceeding).

detailed proof regarding the nature, legal standing, jurisdiction and admissibility of evidence of the requested discovery abroad.  In fact, *Intel* expressly instructed courts to desist from requiring such onerous proof and fact finding.  (Facebook ignores *Intel* for this portion of its brief.)  The *de minimis* standard easily is met here based on Applicant's first-hand testimonial declaration and the dozens of judicially noticeable press articles and Hun Sen admissions regarding the existence and content of the foreign proceedings.  Lest there be any doubt, Mr. Sam has provided a reply declaration further explaining the foreign cases and how his requested discovery would be used.

**Fifth**, the International Criminal Court ("ICC") has nothing to do with this case or the requested discovery.  Facebook does not explain how Hun's fake "likes" could be of use in any ICC proceeding.  Facebook's counsel also fails to inform the Court that evidence from U.S. courts expressly may be used in ICC cases of crimes against humanity, and that numerous U.S. officials and agents have rendered assistance to the ICC without any trepidation.

**Sixth**, Facebook attempts to prevent discovery by reference to comity concerns.  But Hun Sen and his agents expressly stipulated to the jurisdiction of this Court relating to their use of Facebook's platform.  Further, if anything, comity works against Facebook's position.  The U.S. government, the White House, various members of Congress, and the UN Human Rights Office of the High Commissioner have increasingly voiced public concern regarding Hun Sen's misuse of power, manipulation of Courts and disregard of the rule of law.  *See* Hagey Rep. Decl. Exhs. 4-7.  The requested discovery would aid that goal.

**Finally**, the second largest company in the world by market capital complains that the requested discovery – a handful of document requests and a deposition notice – would be "unduly burdensome."  Facebook has well over a hundred of well-paid in house lawyers, thousands of data engineers, and perhaps the world's most sophisticated data mining operation.  Compliance with discovery here will be, relative to the rest of Facebook's operations, a piece of cake.

In sum, Applicant seeks important information that is easily within Facebook's reach and which Courts routinely have ordered to be produced in other § 1782 contexts.  The Application should be granted and Facebook's objections to production denied.

**ARGUMENT**

**I.     THE COURT'S ORDER TO ADDRESS THE NOTICE REQUIREMENT**

In its Order setting a briefing schedule (Dkt. 4), the Court asked the parties to "address the requirements regarding notice to parties in the underlying action in Cambodia under the Federal Rules of Civil Procedure." (Dkt. No. 4.) Facebook's response is that Applicant has not met some kind of notice requirement under § 1782. (Opp. at 20.) This argument fashions a requirement out of whole cloth and misconstrues the law and the Federal Rules. It also ignores the practical reality of Hun Sen's thorough notice of, and comment on, this case.

Technically speaking, any notice requirement under § 1782 would only arise after the Court's approval of the Application, and not before. Discovery conducted under § 1782 occurs by default "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782. *See Knaggs v. Yahoo! Inc.*, No. 15-MC-80281-MEJ, 2016 WL 3916350, at *7 (N.D. Cal. July 20, 2016) ("The proper scope of discovery arising out of a § 1782 application is determined by the Federal Rules of Civil Procedure.") Federal Rule 30 in turn only requires "*reasonable* written notice" relating to requested discovery and Rule 45 only requires that a party provide notice "*before [a subpoena] is served* on the person to whom it is directed." (Emphasis added). In other words, the time for notice has yet to arise.

Here as well, Hun Sen is well on notice that this Court has jurisdiction over his use of Facebook's platform. See Statement of Rights and Responsibilities, https://www.facebook.com/legal/terms at § 15 ("You will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County"); § 16 ("You consent to having your personal data transferred to and processed in the United States."). Facebook's data policy likewise has users stipulate to the ability of parties such as Applicant to have access to such information upon service of a "subpoena" and as part of investigations and to address fraud (such as is alleged here):

> We may access, preserve and share your information in response to a legal request (like a search warrant, court order or subpoena) if we have a good faith belief that the law requires us to do so. This may

> include responding to legal requests from jurisdictions outside of the United States where we have a good faith belief that the response is required by law in that jurisdiction, affects users in that jurisdiction, and is consistent with internationally recognized standards. We may also access, preserve and share information when we have a good faith belief it is necessary to: detect, prevent and address fraud and other illegal activity; to protect ourselves, you and others, including as part of investigations; or to prevent death or imminent bodily harm.

https://www.facebook.com/full_data_use_policy (last accessed 3-7-2018).

The Court also has discretion to order procedures which differ from the Federal Rules. *See, e.g.*, *In re Merck & Co., Inc.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000) (§ 1782 "provide[s] the Court with authority to approve the practice and procedure of the discovery" and the manner of notice, if any). Here, given the dozens of news articles regarding the Application, including the *New York Times*, the *Phnom Phen Post*, *Vice*, *The Guardian*, and other relevant publications, the parties in the underlying cases are well apprised of the existence and nature of these proceedings. Hagey Rep. Decl. Exhs. 2-3.[2] For example, in response to this Application, Hun Sen's under secretary of state, Huy Vannak, explained to a reporter from the *New York Times*: "'I just tell stupid Sam Rainsy that if he plays Facebook, he should know about this,' Mr. Huy Vannak said. 'Facebook has room for everyone to pay and boost their Facebook 'likes.' This is reality. If he wants more 'likes' on his Facebook, he can pay the money to Facebook, and then he will get more 'likes' if he wants.'" *Id*. at Hagey Rep. Decl. Exh. 3.

Should the Court seek to add a notice requirement, Applicant welcomes delivery by reasonable means once the Subpoena issues. This could be pursuant to various ordinary means of notice in the circumstances, such as via international courier (FedEx or DHL), hand delivery to Cambodia's Embassy or U.S. Consulate, or via Facebook, which is how Hun Sen and his agents largely communicate with foreigners. *See* Application, writ large.

## II.   APPLICANT DOES NOT SEEK ANYTHING ACTUALLY PROTECTED BY THE STORED COMMUNICATIONS ACT

Facebook's most demonstrative argument concerns application of the Stored

---

[2] *See also* Andrew Nachemson, *Sam Rainsy files lawsuit against Facebook*, THE PHNOM PENH POST, Feb. 9, 2018, *available at* http://www.phnompenhpost.com/national/sam-rainsy-files-lawsuit-against-facebook; Ben Paviour, *Cambodia Facebook feud hits California courts*, BBC NEWS (Feb. 8, 2018), *available at* http://www.bbc.com/news/world-asia-42828557.

1  Communications Act, a federal law that precludes production of "the contents of a communication"
2  from an electronic communication service provider, 18 U.S.C. § 2702.
3      In order to protect its advertising cash flow, Facebook fails to advise the Court that similar
4  discovery repeatedly has been ordered in similar circumstances and that the statute does not bar all
5  (or even most) information held by a service provider, *i.e.*, provided the documents are "non-
6  content information." Magistrate Judge Corley most recently navigated this issue as to Facebook
7  itself in a different § 1782 action, *In re: Request for Int'l Judicial Assistance From the Turkish
8  Ministry of Justice*, No. 16-MC-80108-JSC, 2016 WL 2957032, at *2 (N.D. Cal. May 23, 2016).[3]
9  As here, petitioner's subpoena sought "non-content information from Aytav's Facebook account"
10 such as metadata and other bibliographical information, "but not the messages themselves." The
11 Court granted the request and, equally important, Facebook did not object, reserving rights to argue
12 on the merit of specific requests.
13     Applicant here scrupulously sought to avoid any issue under the SCA. The Subpoena
14 expressly states that no documents shielded from production under the statute should be deemed to
15 be requested by Applicant:
16
>  For avoidance of doubt, nothing in this Request shall be deemed to
>  seek information or documents that Facebook is legally prohibited
17 from producing pursuant to the Stored Communications Act, 18
>  U.S.C. § 2701, *et seq*.
18
(Hagey Decl. Exh. 1 at 4 (Subpoena "Instructions")).
19
    At least one § 1782 application has encountered this issue head on, and lived to secure the
20
requested discovery. In *Thompson v. Doel*, No. 513CV80088EJDPSG, 2013 WL 5544607 (N.D.
21
Cal. Oct. 7, 2013), an anonymous email was sent to the applicant's employer alleging that she had
22
obtained her position at a school in Canada due to nepotism rather than merit, and the applicant
23
sought the sender's information from Google to use in Canadian proceedings. *Id*. at *1. The initial
24
§ 1782 application was denied because the Court, the Honorable Edward Davila, concluded that the
25
discovery requests ran afoul of the SCA. *Id*., 13-MC-80088-EJD (N. D. Cal. May 21, 2013) (Dkt.
26
2). The application was then revised to seek "documents sufficient to identify: 'the names,
27

---

28  [3] It also does not appear any "notice" was required to be provided to any foreign litigant.

addresses, telephone numbers, e-mail addresses, and Media Access Control addresses of the owner'" of the email address that had sent the email in question, but not the content of any emails. *Id*. at *1.  The Court then granted the revised application.  *Id*. at 3.

This is exactly the situation presented here.  Rather than seeking the content of communications sent by known individuals, Applicant seeks information sufficient to identify who engaged in communication the content of which is already known.  This procedure has been endorsed by other Courts in this District and is allowed under the SCA.

To further avoid any issue, Applicant also constructed the Requests to avoid implicating the SCA by either expressly seeking Facebook's own files and communications or excluding "content" communications from the Request.  For the Court's convenience, an "SCA Comparison Chart" of the requested information and explanation as to each topic's allowance under the SCA is appended to Hagey Rep. Decl. at Exh. 10.  For present purposes, consider thus the manner of the following Requests:  RFP No. 4 (investigation Facebook has conducted into whether Hun has violated Facebook policies), RFP No. 6 (disciplinary actions taken against Hun for any policy violations), RFP No. 12 (payments by Hun for advertising on Facebook); RFP Nos. 13-15 (Facebook's current and historical processes for enforcing its policies).  Other requests, such as RFP No. 10, further avoid the issue by excluding "content information" and only seeking other forms of information that is routinely provided in § 1782 discovery.  *See Turkish Ministry*, 2016 WL 2957032 at *2.  Likewise, the 30(b)(6) deposition categories similarly seek to avoid the content of any user communications.  (*See* Topics Nos. 4-7, 11-12.)

Facebook appears to focus on three document requests and four deposition subject categories (Opp. at 7-8).  Facebook's rendering is unreasonable and easily can be addressed by the parties in meet and confer on the actual mechanics of review and production, *viz*, as in almost any document review and production exercise.  For example, Request No. 3 seeks "[a]ll documents regarding uses by the Hun Group FB Accounts to … make threatening or abusive messages to third parties."  This seeks Facebook's efforts to police its own policies, not Hun's Facebook messages about whom or what to threaten.

Similarly, Facebook incorrectly argues that Requests such as RFP No. 1 are barred by the SCA.  (Opp. at 7.)  RFP No. 1 seeks "[d]ocuments showing the geographic source, date, user and account that sent the 'likes'" on the Hun FB Page.  (Hagey Decl., Ex. 1.)  Respondent argues that this would require it to "disclose which users expressed 'approval' or 'support' for, or some affinity with" Hun Sen.  (Opp. at 7.)  Not true and, moreover, Facebook already is on record in this District as not opposed to "non-content" document requests regarding foreign proceedings.  *Turkish Ministry*, *supra*.  The SCA by its terms simply does not bar disclosure of such non-content communications, *e.g.*, relating to the identity of actors or IP addresses.  At worst, these issues would be resolved through the meet-and-confer process, where parties can negotiate and/or clarify the scope of requests.  They are not a basis to reject any request, much less the Application itself.

### III. THE COMMUNICATIONS DECENCY ACT HAS NO RELEVANCE TO THIS CASE AND DOES NOT PRECLUDE ANY DISCOVERY OF FACEBOOK

Facebook incorrectly argues that the Communications Decency Act somehow bars the Application. (Opp. at 8-10.)  This is simply wrong and Facebook fails to provide any applicable precedent favoring such a strange interpretation of the statute.

The CDA has nothing to do with discovery.  It is a law that protects some internet service providers from legal claims of liability for particular actions of those using their systems.  It in no way precludes or otherwise immunizes such providers from having to comply with the Federal Rules of discovery.  *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*) (footnotes omitted) (CDA narrowly construed and serves only to "immunize[] providers of interactive computer services against liability arising from content created by third parties."); *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 WL 13153230, at *6 (N.D. Cal. Mar. 22, 2011) (acts solely as immunity from liability).

Because the law is so limited, the Ninth Circuit, *en banc*, has rejected the idea of broadening the CDA beyond creating immunity from liability for posting third-party content.  *Fair Hous. Council*, 521 F.3d at 1175.  Indeed, the cases granting § 1782 discovery of Google and Facebook in Section II, *supra*, would not even be possible if Facebook's novel argument were true.

As a fallback, Facebook argues that Courts "often stay[] discovery where a defendant invokes CDA immunity." Again, the Internet giant seeks to mislead the Court. Its counsel fails to advise that in all of the examples it provides, the provider was a defendant against whom liability was sought. (Opp. at 9.) That obviously is not this case. Applicant is not seeking to hold Facebook liable for Hun's content.

Finally, CDA immunity only is available "only if the interactive computer service does not 'create or develop' the information 'in whole or in part.'" *Fair Hous. Council*, 521 F.3d at 1166 (internal brackets omitted). In that case, the Ninth Circuit found that the CDA did not apply where Roommates.com required users to provide certain information as a condition of using its service, and this information could only be provided by selecting from a limited set of options provided by the website. 521 F.3d at 1166. In this way, the website became "much more than a passive transmitter of information provided by others; it [became] the developer, at least in part, of that information." *Id.*

Similarly here, Facebook created and developed the content related to Hun's likes, as a "like" is a functionality of the Facebook website that was created and is defined by Facebook. Facebook, *Liking and Reacting*, https://www.facebook.com/help/452446998120360/ (last visited March 5, 2018) (explaining that "[c]licking Like below a post on Facebook is an easy way to let people know that you enjoy it"). Facebook is not merely a "passive transmitter of information provided by others," but is instead directly involved in the creation and development of that information. Thus, the CDA offers no aid in Facebook's apparent effort to hide its information, investigation and apparent acquiescence regarding Hun Sen's human rights abuses.

## IV. APPLICANT OVERWHELMINGLY HAS SHOWN THAT THE INFORMATION IS SOUGHT FOR USE IN FOREIGN PROCEEDINGS

Facebook makes a number of arguments related to Applicant's intended use the documents, largely seeking to turn this Court into a contest regarding the evidentiary value of the material in a Cambodian court. In doing so, Facebooks seeks to impose new – and long rejected – requirements on the use of § 1782, claiming that Applicant has not sufficiently proven the existence of foreign proceedings or his ability to use the documents therein, and further speculates that Applicant might

be trying obtain the documents at issue for "political" purposes.  (Opp. at 9-14.)

These arguments lack merit and are barely colorable, especially from the same counsel that probably contributed more than any other to the liberalization of § 1782 in aid of foreign proceedings.[4]  As explained in the Application (at 17), and unrefuted by Facebook, the standard for showing usefulness in a foreign proceeding is "*de minimis*."  *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010).  The Supreme Court has explained that Congress has over time "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-49 (2004).  As a result, courts increasingly grant § 1782 applications in all types of informal and non-traditional proceedings including "investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies."  *Intel*, 542 U.S. at 258.  Indeed, as Justice Ginsberg opined, the foreign proceeding at issue only shall be "within reasonable contemplation," not even "pending" or "imminent." *Intel*, 542 U.S. at 247.  *See Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14 CIV. 9997 CM, 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (noting that *Intel* "overturned *Euromepa* [2d Cir.]

---

[4] Facebook's counsel at Gibson Dunn famously wielded § 1782 discovery like a tractor beam to impugn Ecuadorian human rights litigation and later in tag-along US-based racketeering cases. *See e.g.,* Andrea Neuman, Gibson Dunn, Employing U.S. Subpoena Power in Support of Foreign Litigation: *Chevron Corp. v. Donzinger* and 28 U.S.C. § 1782 (July 14, 2014) (available at http://www.gibsondunn.com/publications/Pages/Employing-US-Subpoena-Power-in-Support-of-Foreign-Litigation.aspx.)  The firm consistently has lauded the virtues of § 1782's "*de minimis*" standard and flexibility, *e.g.*, for use in investigating issues related to "non-traditional, non-adjudicative proceedings."  *See* Scott Edelman, *et al.*, Gibson Dunn, Obtaining U.S. Discovery to Litigate in Foreign or International Tribunals Pursuant to 28 U.S.C. § 1782 (Jan. 28, 2015).  See also, https://www.gibsondunn.com/webcast-transnational-litigation-obtaining-u-s-discovery-to-litigate-in-foreign-or-international-tribunals-pursuant-to-28-u-s-c-%C2%A7-1782/ (§ 1782 is powerful tool for obtaining discovery from these U.S.-based witnesses); https://www.gibsondunn.com/2016-year-end-transnational-litigation-update/ ("[T]he standard for obtaining discovery under Section 1782 remains liberal."); https://www.gibsondunn.com/2015-year-end-transnational-litigation-update/ (enables litigants to use the United States' broad discovery process to obtain evidence for use in foreign proceedings); https://www.gibsondunn.com/wp-content/uploads/documents/publications/NeumanStaversBrook-EmployingUSSubpoenaPower.pdf (Courts have adopted a broad reading of "a proceeding in a foreign or international tribunal," and have generally held that it can reach some private arbitrations and is not limited to purely adjudicatory proceedings, but can reach administrative, investigative and prosecutorial forums).

insofar as it held that § 1782 discovery was not available because a motion to reopen the French judgment was neither "pending" nor "imminent.").

As such, the Application is not intended to open a battle of foreign law experts – and Facebook's unsupported and often puerile speculation about Applicant's motives, even if true, would not merit denying the Application. Here, Applicant has more than adequately shown the existence of the foreign proceedings (which Facebook does not deny) and the intended usefulness of the discovery he seeks.

### A. Applicant Has Shown that the Information Sought Will be Useful in the Foreign Proceedings

Mr. Sam's Declaration explains, "I plan to use the requested discovery to defend myself in the lawsuits that Hun Sen and his allies have brought against me, to establish the Cambodian government's misuse of Facebook, and for other contemplated proceedings related thereto." (Sam Decl. ¶ 14.) It further explains: "Under Cambodian law, pursuant to the Cambodian Criminal Procedure Code Articles 444-446, a party may submit evidence as part of his appeal" (*id.* ¶ 16), and that "Truth is a defense to defamation under Cambodian law." (*Id.* ¶ 17.) The nature of the proceedings is identified in Mr. Sam's Declaration, and the documents he seeks are directly relevant to the issues in those cases.[5]

This easily meets the standard of showing that the information sought has "some relevance" to a foreign proceeding. *E.g.*, *In re Republic of Ecuador*, No. 10-MC-00040 GSA, 2010 WL 4027740 (E.D. Cal. Oct. 14, 2010) (granting § 1782 application where applicant made a "prima facie showing that the information it seeks … has, generally speaking, some relevance" to foreign proceeding); *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (§ 1782's "for use" requirement merely requires that the information "will be employed with some advantage or serve some use in the proceeding").

That Facebook found an expert willing to contradict Mr. Sam's declaration is not a basis for

---

[5] *E.g.*, RFP No. 1 seeks information about Hun's "likes" to prove the truth of Applicant's allegedly defamatory statement that they are false. Requests 2-7 seek information about investigations of Hun's violations of Facebook policies, which will similarly support Applicant's truth defense. Deposition Topics 1, 2, and 5-8 all relate to these same topics and will be useful in the same way.

denying the Application, as Facebook argues.  (Opp. at 12-13.)  *See Mees*, 793 F.3d at 298 (expressing "concern that such inquiries can become 'a battle-by-affidavit of international legal experts, and result in a superficial ruling on foreign law'") (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir.1995) (internal brackets and ellipsis omitted); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009) (citing *Euromepa* to explain its conclusion that it was not "necessary [for it] to make findings as to whose expert correctly characterizes [foreign] law and procedure").

Here, Applicant accurately has described the nature of the foreign proceedings against him and how the information he seeks will be useful to him in those proceedings.  Applicant also has appended numerous public articles and admissions by the Cambodian regime that the legal proceedings exist and are being promoted against Applicant.  Hagey Rep. Dec. Exhs. 2-3.  The Court need not turn this into a battle of experts on foreign law.  And, even if it did, the declaration and evidence presented by Applicant, including in his supplemental Reply Declaration, would more than adequately establish the need and legitimacy of the requested discovery – including for use in appeals and re-opening proceedings based on later discovered evidence.  *See generally* Rainsy Rep. Decl.

Facebook also makes the unsupported argument that Applicant must introduce as evidence the court documents from the Cambodian foreign proceedings.  There is no such requirement in § 1782, and Facebook does not deny the existence or otherwise refute the substance of Mr. Sam's declaration about the nature of the cases.  As noted, the Court is entitled to take judicial notice that the entire world is aware of the foreign proceedings against Applicant.  The only cases Facebook cites (Opp. at 11-12) do not stand for the proposition that a party must submit foreign court documents on pain of dismissal.  In *In re WinNet R CJSC*, 2017 WL 1373918, (S.D.N.Y. Apr. 13, 2017), the court did not quash the subpoena because foreign court documents were not provided, but instead because it specifically found that the applicant's attorneys did not fulfill their duty of candor, failing to mention important details of which they were aware that "may very well have led the court to deny the application." *Id.* at *9.  This is not the case here, and Facebook does not claim otherwise.  And in *Nokia*, the court did not deny the application because no foreign pleadings

were provided, but instead because the court found that the application was unduly burdensome. *In re Ex Parte Application of Nokia Corp.*, No. 513MC80217EJDPSG, 2013 WL 6073457, at *3 (N.D. Cal. Nov. 8, 2013).[6]

**B.     Facebook's Speculation about Applicant's Motives Is Both Misguided and Irrelevant**

Facebook asserts that the Application is a "fishing expedition" or that it was brought "to effect regime change." (Opp. at 10-11.)  Facebook explains this conclusion by pointing to Applicant's intent "to use the requested discovery … to establish the Cambodian government's misuse of Facebook." (*Id.*)  Facebook's selective citations are both misleading and tantamount to its own version of "fake" news.  Applicant repeatedly has sworn to this Court and expressed publicly that his candid intention is to obtain the requested discovery for use in connection with the foreign proceedings against him, and any others that he may himself bring.  The fact that the Cambodian government's misuse of Facebook underlies the defamation charges against Applicant does not somehow excuse it as a basis for discovery.  Merely because this is an important case does not render Applicant's motives impure; nor does Facebook have credible evidence.

Facebook next argues that the entire Application should be denied because Applicant intends to use some of the evidence "to bring charges against [Hun Sen] in the International Criminal Court" ("ICC"). (Opp. at 19.)  Facebook again is trading in speculation and innuendo.  There is no evidence to support the company's position and it does not explain how Hun's fake likes would be relevant to any ICC proceeding.  Equally troubling, Facebook's counsel fails to advise the Court that the American Service Members Protection Act contains an express exemption that that "[n]othing in this subchapter shall prohibit the United States from rendering assistance to international efforts to bring to justice … foreign nationals accused of genocide, war crimes, or crimes against humanity." 22 U.S.C. § 7433.[7]  There is substantial evidence of U.S. agencies and instrumentalities giving aid and assistance to the ICC for such prosecutions.

---

[6] As noted, Applicant has submitted a Reply Declaration further explaining the foreign proceedings and refuting the improper arguments by Facebook's purported expert.

[7] Applicant submitted unrefuted evidence in his moving papers showing that Hun has committed numerous crimes against humanity, including genocide.  Facebook does not refute this proof.

## V. FACEBOOK'S EFFORT TO ASSERT "COMITY" CONCERNS ON BEHALF OF CAMBODIA'S DICTATORSHIP IS UNSUPPORTED

Facebook offers no evidence or legal authority to support the "comity" argument it is making on behalf of Hun Sen's brutal dictatorship. (Opp. at 17-18.) Foremost, this argument is pure speculation, as Facebook offers no declaration from Hun to support this contention. And it borders on absurdity to think that a social media company's obligation to produce records about its "likes" would somehow jeopardize U.S.-Cambodian relations. (Opp. at 18.) If anything, an honest government would want Facebook to turn over any relevant evidence it has, in the search for truth in criminal proceedings.

Applicant is obtaining the information from Facebook here in the Northern District. Such discovery, by its nature, is not intrusive of Cambodia or its legal system. Nor is it relevant that the information might not be subject to discovery in Cambodia. In *Intel*, the U.S. Supreme Court recognized that a foreign tribunal may have any number of reasons for limiting discovery based on its own "legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." 542 U.S. 241 at 261. The Court rejected a foreign-discoverability rule as part of the § 1782 analysis, calling it "senseless." *Id.* at 262.

The three decisions cited by Facebook (Opp. at 17-18) are inapposite. In *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013), the Court stated that the discovery request was denied by the Special Master in part due to comity concerns, without explaining what those concerns were. *Id.* at *3. In *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078 (N.D. Cal. 2007), discovery in a domestic case was denied due to concerns of international comity, but there, the Court emphasized that "a foreign entity ha[d] taken a clear position and articulated reasons why it believes production of the requested documents would harm its interests." *Id.* at 1084. This is not the case here. Finally, *In re Microsoft Corp.*, No. C06-80038 JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29, 2006) involved a discovery request which conflicted with a foreign "tribunal's specific order restricting a specific litigant's ability to gather evidence." *Id.* at *3. Again, this is not the situation here.

## VI. THE DISCOVERY REQUESTS DO NOT IMPOSE AN UNDUE BURDEN

Applicant is one of the world's largest companies and employs thousands of data engineers.

Its legal department has well over a hundred lawyers barred in California alone. Despite such largesse, Facebook contends that there is some kind of undue burden. The argument does not scan.

In the foreign proceedings against him, Applicant faces the possibility of large fines and significant jail time. (App. at 9-10.) Applicant's discovery requests are a handful of document requests and a single deposition. Multi-billion dollar companies like Facebook routinely comply with discovery requests like these.

Facebook's argument that "it is impossible to say precisely what 'issues are at stake' in the foreign proceedings because the application does not provide any documentation from those proceedings" (Opp. at 15) is specious. These proceedings are documented in the Application and Mr. Sam's Declaration, as well as numerous news articles, as have the human rights abuses of the Hun regime. Facebook knows exactly what is at stake in these proceedings and that its burden of compliance with the requested discovery would be exceedingly minimal in light of them.

The appropriate proportionality of Applicant's requests is made immediately apparent by the § 1782 discovery approved of just days ago in *In Re Ex Parte Application of Nanopyxis Co., LTD., Applicant.*, No. 4:17-MC-80151-KAW, 2018 WL 1156838, at *1-2 (N.D. Cal. Mar. 5, 2018). There, NanoPyxis Co., Ltd., which manufactures nanowires, had filed a trade secret misappropriation case in Korea, alleging that its former chief technology officer had stolen its trade secrets and formed a competing company that was later sold to C3Nano, Inc. NanoPyxis thereafter filed a § 1782 application seeking discovery from C3Nano, which moved to quash the subpoena. *Id.* at *1. The court denied the motion to quash, rejecting C3Nano's argument that the requested discovery imposed an undue burden and allowed discovery of numerous sensitive trade secrets, such as "all documents or communications that discuss or relate to, or contain NanoPyxis' trade secret information, in whole or in party, directly or indirectly." *Id.* at *4-6. Furthermore, the cases cited by Facebook are inapposite. *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015), was not a § 1782 case, and turned on the fact that documents requested from DropBox were readily attainable from defendant or public sources. Here, neither of those two things is true.

There is no undue or other cognizable burden.

## CONCLUSION

For the foregoing reasons, Applicant's application should be GRANTED and the accompanying Subpoena permitted to issue without further delay.

Dated:  March 7, 2018                                         BRAUNHAGEY & BORDEN LLP

/s/ J. Noah Hagey
J. Noah Hagey, Esq.

Attorneys for Applicant Sam Rainsy