UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM APPLICANT,<br><br>　　　　　Applicant,<br><br>　　v.<br><br>FACEBOOK, INC.,<br><br>　　　　　Defendant. | Case No. 18-mc-80024-SK<br><br>**ORDER DENYING APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 FOR LEAVE TO OBTAIN DISCOVERY**<br><br>Regarding Docket No. 1 |

Sam Rainsy ("Applicant") has filed an *Ex Parte* Application for leave to obtain third party discovery from Facebook for use in proceedings in Cambodia, pursuant to 28 U.S.C. § 1782. Facebook, Inc. ("Facebook") opposes the motion. Applicant seeks both documents from and a deposition of Facebook pursuant to Fed.R.Civ.P. 30(b)(6) on several topics. Having reviewed the parties' papers, relevant legal authority and having heard oral argument, the Court DENIES the motion for the reasons set forth below.

**BACKGROUND**

Applicant is the founder of the Cambodian National Rescue Party ("CNRP") and is living in exile in France. (Dkt. 2, ¶¶ 3, 13.) Applicant is a vocal opponent of the current Cambodian government, under the leadership of Prime Minister Hun Sen, an ex-commander of the Khmer Rouge. (*Id.*, ¶ 1.) Applicant has already been the subject of one assassination attempt, and Hun Sen has threatened his life. (Dkt. 2, ¶ 2; Dkt. 13, ¶ 26).[1]

Applicant seeks information from Facebook to respond to criminal and civil proceedings

---

[1] Applicant focuses much of his argument both in writing and at the hearing on the evils of the current Cambodian government and of Facebook and provides numerous exhibits to prove his point. (Dkts. 3; 3-1, 3-2, 3-3; 3-4; 3-5; 3-6; 3-7.) Allegations that some parties are reprehensible do not alter the Court's analysis here, because the rule of law – which Applicant supports – requires that the Court treat all parties fairly.

that Hun Sen and his proxies have initiated against him in Cambodia. These include the following:

(1) <u>First Defamation Case</u> - Son Soeun, the manager of Hun Sen's Facebook account and a government minister, filed a defamation claim against Applicant on March 10, 2016. That claim alleges that Applicant made a false statement on Facebook that millions of Hun Sen's Facebook "likes"[2] were generated by "click farms." (*Id.*, ¶6 and Ex. 2.) Applicant was found guilty on November 6, 2016, and the judgment was upheld in January 2017. (Dkt. 2, ¶6.) The matter is already on appeal with Cambodia's Supreme Court. (Dkt. 2, ¶ 6; Dkt. 13, ¶ 6.)

(2) <u>Second Defamation Case</u> - In August 2016, Hun Sen commenced criminal defamation and "incitement" charges against Applicant for posting on Applicant's Facebook page that the murder of respected human rights activist and journalist Dr. Kem Ley was a government-ordered assassination. After failing to appear in that proceeding, Applicant was barred from entering Cambodia, convicted of defamation and incitement, and sentenced to twenty months in jail. (Dkt. 2, ¶ 7; Dkt. 13, ¶ 7 and Ex. A.) Applicant provided a copy of the complaint against him, the summons for him to appear, and a translation of the verdict. (Dkt. 13, ¶ 7 and Ex. A, B, C.) A copy of the appellate court's decision rejecting appeal without argument (which has since been appealed), is attached to Applicant's second declaration. (*Id.*, ¶ 16 and Ex. F, G.)

(3) <u>Third Defamation Case</u> - On January 17, 2017, the Cambodian government initiated criminal defamation charges at the behest of Thy Sovantha, a Cambodian celebrity with ties to Hun Sen, after Applicant posted information on his Facebook page showing that Hun Sen's associates and family bribed Thy Sovantha to voice support for the government. On December 29, 2017, Applicant was found guilty and fined the equivalent of $1 million USD. (Dkt. 2, ¶¶ 9,

---

[2] "Facebook is an online social network where members develop personalized web profiles to interact and share information with other members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012). As the Court in *Bland v. Roberts* explained, "[l]iking on Facebook is a way for Facebook users to share information with each other." 730 F.3d 368, 385 (4th Cir. 2013). "The 'like' button, which is represented by a thumbs-up icon, and the word 'like' appear next to different types of Facebook content." *Id*. To "like" something is "an easy way to let someone know that you enjoy it." *Id*. (internal citation and quotation omitted). When a Facebook user "likes" a Facebook Page, the user is then identified as a person who "likes" that Page and can receive content directly from that Page. *Id*.

11, 12.)  Applicant plans to appeal the decision.  (Dkt. 13, ¶ 18.)

(4) <u>Criminal Incitement Charge</u> - On December 7, 2017, the current Cambodian government charged Applicant with criminal incitement based on statements Applicant posted to his Facebook page urging Cambodia's military to cease use of deadly force against peaceful protestors.  (Dkt. 2, ¶ 11; Dkt. 13, ¶8.)  The Cambodian government filed those incitement charges approximately four months ago.  (Dkt. 13, ¶¶ 14, 17.)

## ANALYSIS

### A. Application Pursuant to 18 U.S.C. § 1782

Applicant seeks discovery pursuant to 18 U.S.C. § 1782.  "A district court may grant an application pursuant to 28 U.S.C. § 1782 where (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or any interested person."  *In re Republic of Ecuador,* 2010 WL 3702427, at *2, (N.D. Cal., Sept. 15, 2010).  *See also* 28 U.S.C. § 1782 (a).  There is no dispute that the Application meets the first requirement, as Facebook, with its headquarter in Menlo Park, California, is found in this District.  (Dkt. 3-8, Ex. 25.)  In analyzing the factors, the Court will review the factors out of order, first reviewing the third factor and then the second factor of § 1782.

#### 1. Third Factor:  Use of Information in Foreign Proceeding by an Interested Person

Facebook argues that the Application does not satisfy the third factor to show that Applicant is an "interested person" who can invoke § 1782.  A litigant in a foreign proceeding is an "interested person" who can seek discovery pursuant to § 1782.  *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782") (internal quotations and citations omitted).  An applicant need only establish that a "dispositive ruling" is "within reasonable contemplation" or that "the evidence is eventually to be used" in a proceeding.  *Id.* at 259 (citations omitted).  Facebook argues that Applicant has not shown the existence of a

proceeding in a foreign tribunal, so he cannot show that he is an "interested party" to a non-existent litigation. Facebook argues that Applicant provided only a "skeletal account of the purported proceedings" and that Applicant's declaration and newspaper articles are insufficient to show that he is a litigant in a foreign tribunal. There is no reason to doubt the veracity of newspaper articles and Applicant's own sworn declarations supporting the fact that there are four actions against him in Cambodia. (Dkt. 2, ¶¶6 – 12 and Ex. 1; Dkt. 13, ¶¶ 6 – 9; Dkts. 13-1; 13-2; 13-3; 13-6; 13-7; 19-1; 19-2; 19-3; 19-4.) As both parties note, in Cambodia, there is no public docket from which to determine the existence of a formal proceeding, as there is in the U.S. (Dkt. 11, ¶ 5; Dkt. 13, ¶ 11.) Further, Applicant lives in exile because he fears for his life in Cambodia, and he often relies on other sources for his information about the cases against him. (Dkt. 13, ¶¶ 11-12.) Moreover, Facebook does not provide any evidence to refute the existence of those proceedings against Applicant in Cambodia. Facebook merely provides an expert's opinion that the expert cannot determine whether the four actions in Cambodia are pending. (Dkt. 11, ¶ 7.) That opinion is not enough to overcome Plaintiff's testimony and other documents supporting the existence of the claims against him in Cambodia.

Although the Court is troubled that Applicant cannot provide the source documents for the first defamation case, the Court finds that Applicant has submitted sufficient evidence to show that he is an "interested party" in Cambodian litigation and satisfies the third prong of § 1782.

    **2.**    **Second Factor: Discovery for Use in a Foreign Tribunal**

Facebook argues that, even if Applicant can obtain the information, he cannot use the information sought in Cambodian litigation. However, Facebook cites no law that § 1782 requires a party seeking to show that he can use that information in the foreign tribunal. Facebook's expert witness only opines that it is not clear whether Applicant can use the information he seeks from Facebook in Cambodia. (Dkt. 11, ¶ 4.) Even if there were such a requirement to show that Applicant can use the information sought in Cambodia, Applicant states that he can introduce new evidence on appeal. (Dkt. 2, ¶ 14.) Applicant, though not a lawyer, helped draft the Cambodian Constitution and thus has some familiarity with the law. (Dkt. 13, ¶ 1.) Facebook does not dispute this evidence. *Intel* does not place a requirement on American courts to adjudicate the

4

admissibility of evidence in foreign tribunals.

Facebook also argues that Applicant will not use the discovery he seeks in a foreign tribunal because the information he seeks is not related to the four pending actions. Applicant alleges that the information he seeks is relevant to the defamation claims and thus that he plans to use the information from Facebook to defend against the defamation claims. (Dkt. 2, ¶17 and Ex. 7) In addition, Applicant asserts the information from Facebook will show that Hun Sen and his allies have conspired against Applicant in bringing false charges to undermine Applicant's political work. (Dkt. 13, ¶ 23.) Applicant plans to use the requested discovery to defend himself in the four pending actions listed above and for "other contemplated proceedings related thereto" which he has not identified. (Dkt. 2, ¶ 18 and Ex. 7.) In his reply, Applicant clarified that he intends to sue Hun Sen in Cambodia or urge the United Nations to sue Hun Sen. (Dkt. 13, ¶ 13.)

A party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant to the claims and defenses in the foreign tribunal, and the court should be "permissive" in interpreting that standard. *In re Veiga*, 746 F.Supp.2d 8, 18 (D.D.C. 2010) (internal citation and quotation omitted); *see also Digital Shape Techs., Inc. v. Glassdoor, Inc*., 2016 WL 5930275, at *3 (N.D. Cal. Oc. 12, 2016) ("The party issuing the subpoena has the burden of demonstrating the relevance of the information sought.")

To determine whether the discovery Applicant seeks is relevant to the Cambodian legal actions, the Court must analyze those matters in relation to the categories of information.

### a. Information about "Likes" on Hun Sen's Facebook Page

Applicant seeks information to show that his statement about the false "likes" for Hun Sen's Facebook page was true. To that end, Applicant seeks documents, in categories 1 and 2 specifically related to the issue of "likes" on Hun Sen's Facebook page and any investigation by Facebook into the "likes" on Hun Sen's Facebook page. (Dkt. 3-1, Ex. 1). Applicant also seeks, in categories 4, 5, 6 and 7, general information about Facebook's investigations of and communications with Hun Sen on any topic, which might include the false use of "likes." (*Id.*) In addition, Applicant seeks to depose a Facebook representative (in categories 5 and 8(a)) about Hun Sen's use of Facebook to disseminate false information regarding "likes" and policies and

procedures regarding false use of "likes." (*Id*.) The requests directed to general violations of Facebook policies are not targeted to the potential generation of false "likes" and thus are not relevant to the first defamation case, but the information about "likes" on Hun Sen's Facebook page are related to the first defamation case.[3]

### b. Other Categories of Information

The other categories of information both in the request for documents and in the deposition notice are not related to the issues in any of the four Cambodian cases. For example, in category 10, Applicant seeks information about communications – allegedly without seeking the contents of the communications – between and among eight people (Hun Sen and his affiliates) "regarding" several subjects: Applicant, the four cases against him in Cambodia, the Cambodian National Rescue Party, Kem Sokha, Kem Ley, and payments to Thy Sovantha. (Dkt. 3-1, Ex. 1). Applicant seeks the "header and meta-data information (i.e., non-content information) regarding the dates, times, senders, recipients, date read, and forwarding and deleting actions for those communications. (*Id*.) Applicant claims that this information, the fact that these eight individuals were discussing these six subjects at some unspecified time, will show that they are involved in a conspiracy against Applicant. (Dkt. 13, ¶ 23.) Applicant concedes that he does not seek the content of the communications. (Dkt. 3-1, Ex. 1). However, the mere fact that people are communicating about a subject or person does not show that those people are conspiring to make false claims against him. This information has marginal relevance at best and is also subject to the Stored Communications Act, discussed below.

Additionally, Applicant seeks documents about the following: communications between and among the same eight individuals about this Application, payments by the same eight individuals for advertising with Facebook, and Facebook's historical processes for preventing

---

[3] At oral argument, Facebook stated that the first case for defamation against Plaintiff is closed, as the Cambodian Supreme Court has finally ruled on the motion. However, Facebook does not present any evidence for that statement and does not explain whether Cambodian law forecloses any chance by Plaintiff to challenge that decision.

false or deceptive news and threatening or harassing statements.  (*Id*.)  Applicant also seeks to depose Facebook on the following subjects in all categories other than 5 and 8(a):  response or enforcement of policies against Hun Sen's Facebook page, complaints and investigations regarding "findings regarding" Hun Sen's Facebook page, communications with Hun Sen, policies and procedures regarding threats or harassment on Facebook, Hun Sen's attempts to disseminate false news or make threats, any communications between Facebook and Hun Sen, funds spent by Hun Sen on Facebook advertising, any negotiations or agreements between Facebook and Hun Sen and the government of Cambodia, Facebook's review of documents, and authentication of any document produced in response to the Application.  (*Id*.)  There is no time limitation on these subjects.  None of these categories of information in the request for documents or deposition topics has any bearing on the four actions in Cambodia.

Facebook also argues that Applicant is attempting to use the information for another, more sinister purpose – other litigation either in Cambodia or in the International Criminal Court.  Facebook argues that a court cannot provide support for the International Criminal Court.  22 U.S.C. §7423(e).  The only statement that might support Facebook's argument is Applicant's statement that he plans to use the requested discovery for "other contemplated proceedings related thereto" or to sue Hun Sen in Cambodia or urge the United Nations to sue Hun Sen in Cambodia. (Dkt. 2, ¶ 18 and Ex. 7; Dkt. 13, 3.)  However, even with that statement, Facebook's argument about Applicant's intentions is speculative, and the Court will not deny the Application based on Facebook's unsubstantiated concerns that Applicant seeks to use information in another court.

Thus, with regard to the requirements of § 1782, the Court finds that Applicant's requests for documents in 1 and 2 and the deposition topics in 5 and 8(a) satisfy the requirements of § 1782.  The documents in categories 4, 5, 6 and 7 might satisfy § 1782, to the extent that they are limited to "likes," but as written, they do not satisfy § 1782 because they encompass far more than issues regarding "likes" and thus have no relevance to the Cambodian cases.  The analysis does not end at this stage, though.

### 3. *Intel* Factors

Even if the seeking party satisfies the core requirements of § 1782, the Court retains wide

discretion to grant or deny discovery under § 1782. *Intel,* 542 U.S. at 260-61. In exercising discretion, the Supreme Court identified several factors for consideration by the court:

(1) whether "the person from whom discovery is sought is a participant in the litigation" and thus can obtain the discovery in the foreign tribunal;

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency abroad to U.S. federal-court jurisdictional assistance";

(3) "whether the §1782 request conceal an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the subpoena contains "unduly intrusive or burdensome requests."

*Intel,* 542 U.S. at 264-65.

### a. Ability to Obtain Litigation against Facebook in Cambodia

The first *Intel* factor for consideration is whether the material sought is within the foreign tribunal's jurisdictional reach.

> A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel,* 541 U.S. at 264. Here, Facebook is not a party to the Cambodian proceeding and therefore Applicant needs the assistance of §1782 to obtain the information he seeks.

### b. Nature of Foreign Tribunal/Comity

Although there is no direct discussion about the nature of the foreign tribunal, Facebook argues that granting the Application implicates comity. Specifically, Facebook claims that Applicant seeks information that includes "private communications of a head of state" and that the Court should deny the Application in deference to foreign policy interests. Facebook offers no evidence or commentary that Hun Sen used Facebook for official, governmental purposes. Given the nature of Facebook as a private company, the claim that the discovery sought involves "private communications of a head of state" is not convincing.

Applicant seeks information about communications between individuals. One of them

happens to be the Prime Minister of Cambodia, who apparently has chosen to utilize Facebook, a private company. Discovery into communications of a private company located in the U.S., even if a head of state of a foreign country uses those services, does not implicate comity.

### c. Foreign Proof Gathering

As to the third *Intel* factor, Facebook argues that Applicant is attempting to circumvent foreign proof-gathering restrictions and policies. However, nothing in Applicant's request or Facebook's argument suggests that Applicant is attempting to circumvent the discovery restrictions that may be in place in Cambodia, and Facebook provides no evidence that Applicant is doing so. The proceedings against Applicant occurred in Applicant's absence because Applicant was concerned about his personal safety. There is no evidence that Applicant sought this information in Cambodia but failed to obtain it because of restrictions on discovery in Cambodia.

### d. Breadth and Burden

As to the fourth *Intel* factor, whether the request is "unduly intrusive or burdensome," Facebook argues that the Application is overly broad because it does not specify a time limit and because it asks for a deposition on topics that are common to many types of litigation. In general, the fact that there is no time period limiting the documents or deposition topics makes the entire Application overbroad. Applicant seeks a wide scope of documents regarding Facebook's policies and procedures and investigations on numerous topics, without any focus on a time period.

With regard to category 10, the Court agrees that asking for information – even without the content of the messages themselves – between and among eight people with an unlimited time period, is unduly broad and burdensome on Facebook. Moreover, the request in category 10 requires Facebook to review and analyze all of those communications between and among eight individuals to determine whether those individuals were communicating about the Applicant, the four cases against him in Cambodia, the Cambodian National Rescue Party, Kem Sokha, Kem Ley, and payments to Thy Sovantha. In other words, in order for Facebook to respond to provide information about the header and meta-data of the communications on those specified subjects, Facebook's attorneys will be required to read all of the communications and determine whether

the communications discuss those six subjects.  This is very burdensome, given that there are eight individuals, six subjects, and an unlimited time period.

And as noted above, the documents sought in categories 4, 5, 6, and 7, to the extent that they do not address the false "likes," are overbroad because they encompass many subjects that are not related to the litigation.  In this regard, the analysis of breadth is related to relevance, because the requests in categories 4, 5, 6, and 7 are overbroad to the extent that they seek irrelevant information.

The scope of the topics in the deposition topics is also broad and burdensome.  For example, as noted above, Applicant seeks information about any communication between Facebook and Hun Sen, in category 9, with no time limitation and no limitation as to subject.  Facebook would have to prepare and provide a representative to talk about every communication on any subject at any time between Facebook and Hun Sen.  Presumably this includes any notice sent by Facebook to Hun Sen, including news articles, suggestions about new "friends," and other topics completely unrelated to the four cases in Cambodia.  That Applicant has not limited the topic of communications is emblematic of the burden of the subpoena.  All of the other deposition topics suffer from the same type of problem.

Thus, the Court concludes that only the documents sought in categories 1 and 2, and the deposition topics in 5 and 8(a) satisfy the *Intel* test, but only if they were narrowly tailored in terms of time period.  For example, if Facebook has documentation of an investigation that shows that that there were one million false "likes" on Hun Sen's Facebook page, generated *after* Applicant's allegedly defamatory statement, that documentation might not be relevant.  The limitation for time period matters both for relevance and burden.

**B. The Stored Communications Act**

Even if Applicant satisfies the requirements of §1782 and the *Intel* test for documents sought in categories 1 and 2, and the deposition topics in 5 and 8(a), Facebook argues that the Stored Communications Act prevents disclosure of the information regarding the identities of people who "liked" Hun Sen's Facebook page.  The Stored Communications Act states that "a person or entity providing an electronic communication service to the public shall not knowingly

1  divulge to any person or entity the contents of a communication while in electronic storage by that
2  service." 18 U.S.C. § 2702(a)(1). Facebook argues, and Applicant does not contest, that it is a
3  provider of electronic communication services and that it cannot divulge the "contents" of its
4  users' communications. There is no exception for civil subpoenas. *In re Facebook, Inc.,* 923
5  F.Supp.2d 1204, 1206 (N.D. Cal. 2012); *Theofel v. Farey-Jones,* 359 F.3d 1066, 1071-72, 1077
6  (9th Cir. 2004).

7  Applicant maintains that he does not seek any information protected by the Stored
8  Communications Act, i.e., "the contents of a communication" in 18 U.S.C. §§ 2510 and 2702.
9  The statute defines "contents" as "any information concerning the substance, purport, or meaning
10  of that communication." 18 U.S.C. 2510(8). At least one court has found that metadata and other
11  bibliographical information without "the messages themselves" do not constitute "contents of a
12  communication" under §1782. *In re Request for Int'l Judicial Assistance from the Turkish
13  Ministry of Justice,* 2016 WL 2957032, at *2 (N.D. Cal. May 23, 2016). *See also Thompson v.
14  Doel,* 2013 WL 5544607, at *1, 3 (N.D. Cal. Oct. 7, 2013) (subpoena approved so long as the
15  application sought "documents sufficient to identify: 'the names, addresses, telephone numbers,
16  email addresses, and Media Access Control addresses of the owner' of the email address, but not
17  the content of any email.")

18  Applicant seeks, in category 1(a), documents "showing the geographic source, date, user
19  and account that sent the 'likes'" to Hun Sen's Facebook page. (Dkt. 3-1, Ex. 1.) Facebook
20  argues that the identities of the people who posted "likes" on Hun Sen's Facebook page equals
21  "contents of a communication" under §1782. The only court that has addressed the issue of the
22  nature of "likes" held that "liking" a Facebook page is a form of speech that "communicates the
23  user's approval" of the person who made the Facebook page. *Bland*, 730 F.3d at 386. The
24  context of *Bland* was different, but the Ninth Circuit has explained in the context of the Stored
25  Communications Act that the meaning of the words "contents of a communication" in 18 U.S.C. §
26  2511(3)(a) and § 2702(2) to be "any information concerning the substance, purport or meaning of

[a] communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-1006 (9th Cir. 2014).[4] Here, given that a "like" or "liking" a Facebook page is speech that communicates approval, a "like" or "liking" constitutes "content" as information concerning the meaning of a communication. The communication conveyed by "liking" a Facebook page is approval. The "identity of a speaker is an important component" of the message. *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). Thus, to the extent that Applicant seeks the identities of people who "liked" Hun Sen's Facebook page, Applicant seeks "contents of a communication" because Applicant seeks to know who approved Hun Sen. The Stored Communications Act precludes that disclosure.

Finally, Applicant seeks information, in category 1(d), "[c]ommunications with the Hun FB Account or its representatives regarding the 'likes.'" (Dkt. 3-1, Ex.1.) Although this may be a drafting error, the request seems to ask for communications between and among the eight individuals. The Stored Communications Act clearly bars that disclosure. It is possible that Applicant intends to seek communications only between Facebook and Hun Sen, but that interpretation seems unlikely because category 1(c) specifically seeks information about communications between Facebook and Hun Sen about the "likes" on Hun Sen's Facebook page. Applicant was able to limit one category to communications between Hun Sen and Facebook in crafting category 1(c), so the absence of similar language for category 1(d) indicates that Applicant seeks something broader.

### 1. Exception under §2511(g)(i)

Applicant argues that there is an exception under the Stored Communications Act that allows a provider to produce "publicly-available" content. However, this exception exists for purposes of intercepting or accessing communications – not disclosing communications. The Stored Communications Act has two components: (1) a part that addresses actions in intercepting

---

[4] In *Zynga*, the Court held that revealing "header information" that included the "user's Facebook ID and the address of the webpage from which the User's HTTP request to view another webpage was sent" did not violate the Stored Communications Act. 750 F.3d at 1107. There was no issue about disclosing the identity of people who posted "likes" and no discussion of "likes" in that case.

and accessing communications under § 2511(1) and (2) a part that addresses the disclosure of information under § 2511(3). Section 2511(2)(g) specifically applies only to prohibitions on the provider's interception or access to electronic communications. The statute specifically states: "It shall not be unlawful under this chapter or chapter 121 of this title for any person – (i) to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public." 28 U.S.C. § 2511(2)(g). By its own language, this exception only applies to intercepting or accessing and not to disclosing communications. In contrast, the second portion of the Stored Communications Act prohibits disclosure: "*Except as provided in paragraph (b) of this subsection*, a person or entity providing electronic communication service to the public may not divulge the contents of any such communication[.]" 28 U.S.C. § 2511(3)(a)(emphasis added). Subsection (b) of 28 U.S.C. § 2511(3) does not contain the exception of subsection (g) of § 2511(2) and thus does not provide an exception for disclosure of "publicly-available" content. By the plain terms of the statute, Applicant's proposed exception does not apply to this situation.

**2. Exception under §2702(b)(5)**

Applicant also seeks to apply an exception under the Stored Communications Act that allows disclosure "necessarily incidental to the rendition of the service or to the protection of the rights or property of the provider of that service." Applicant provides no explanation why this exception applies, and on its face, it does not apply to this situation.

Therefore, the Stored Communications Act prohibits disclosure of the documents sought in category 1(a). With regard to documents sought in categories 1(b), 1(c), 1(d), and with regard to information sought in the deposition topics 5 and 8(a), those documents and information might disclose the identities of users who "liked" Hun Sen's Facebook page, but the categories are written so vaguely that it is impossible to determine whether the information and documents sought contain the "contents of a communication."

**C. Notice to Hun Sen**

Facebook argues that the Court should not grant the Application without first giving notice to Hun Sen. However, notice under § 1782 occurs after approval by the Court of the Application,

not before.  The discovery conducted occurs by default in accordance with the Federal Rules of Civil Procedure.  *Knaggs v. Yahoo, Inc.,* 15-MC-80281-MEJ, 2016 WL 3916350, at *7 (N.D. Cal. July 20, 2016).  Here, the time for notice has yet to arise.  Section 1782 "provide[s] the Court with authority to approve the practice and procedure of the discovery" and the manner of notice, if any. *In re Merck & Co., Inc.,* 197 F.R.D. 267, 269-70 (M.D.N.C. 2000).  "Courts typically handle Section 1782 discovery requests in the context of an *ex parte* application for an order appointing a commissioner to collect the information."  *Turkish Ministry of Justice,* 2016 WL 2957032, at *1 (citing *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir. 1979) (holding that the subpoenaed parties may object and exercise due process rights by bringing motions to quash the subpoena after the court issues a § 1782 order).

## CONCLUSION

The entire Application suffers from the problem of being overly broad and burdensome, given the failure to provide a time period for the documents and information Applicant seeks. And to the extent that Applicant seeks information about investigation of Hun Sen's Facebook page, those should be limited to investigations regarding "likes" without revealing the identities of users who "liked" Hun Sen's Facebook page.  Investigations into other abuses of Facebook's policies are simply not relevant to the four Cambodian cases.  If Applicant were to focus on Facebook's investigations of false "likes" on Hun Sen's page, during the relevant time period, without revealing the identity of the users who posted the "likes," the Application might satisfy § 1782 and evade any problems under the Stored Communications Act.  Although the Court initially noted that some parts of the Application would pass muster, the job of the Court is not to re-write the Application to narrow its breadth and scope.  The Court DENIES the Application, but Applicant may request another Application within the scope discussed above.

**IT IS SO ORDERED**.

Dated: May 4, 2018

_____
SALLIE KIM
United States Magistrate Judge